661 So.2d 162 (1995)
In the Matter of Lucas Anthony DiLEO, M.D.
No. 95-CA-0444.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Rehearing Denied October 25, 1995.
*163 Lawrence J. Smith & Associates, Lawrence J. Smith, New Orleans, for Appellant.
Adams and Reese, L. Thomas Styron, Philip O. Bergeron, New Orleans, for Appellee.
Before BYRNES, CIACCIO and MURRAY, JJ.
*164 CIACCIO, Judge.
This is an appeal from a judgment of the trial court which affirms a decision of the Louisiana State Board of Medical Examiners ("the Board") imposing disciplinary action on Dr. Lucas A. DiLeo. For the reasons stated more fully herein, we reverse the judgment of the trial court and vacate the determination of the Board, dismissing all charges against Dr. DiLeo.

FACTUAL BACKGROUND
Dr. Lucas DiLeo is a general practitioner who has maintained a medical practice in St. Bernard Parish for over forty years. On May 13, 1992, an administrative complaint was filed charging Dr. DiLeo with several violations of the Medical Practice Act. Specifically he was charged with prescribing various substances to eight of his patients which were in excess of legitimate medical justification in amounts, frequency, and duration, in violation of La.R.S. 37:1285(A)(6); with continuing and recurring medical practice which fails to satisfy the prevailing and usually accepted standards of medical practice, in violation of R.S. 37:1285(A)(14); and with medical incompetency, in violation of R.S. 37:1285(12).
In response to this complaint, the Board held an evidentiary hearing on February 26 and March 26, 1993. The evidence offered in support of the complaint was Dr. DiLeo's charts and records pertaining to the eight patients, as well as certain pharmacy records and prescriptions written by Dr. DiLeo for the patients. Also offered was the expert testimony of Dr. Linda Carlson Stewart, an addictionologist. In defense, Dr. DiLeo offered his own testimony, the testimony of six of the patients involved, two of his office employees, and the expert testimony of Dr. Patrick Mottram, an internist and endocrinologist.
On May 26, 1993, the Board rendered a decision finding Dr. DiLeo guilty of all three charges, and imposed certain sanctions, including a suspension of the doctor's license to practice medicine for a one year period, nine months of which was suspended on certain specified conditions.
Dr. DiLeo took a suspensive appeal from this decision to the district court and further applied for a stay of the suspension of his license, which was granted on June 4, 1993. This matter was submitted to the trial court on briefs and oral argument, and by judgment dated November 21, 1994, the trial court affirmed the decision of the Board. It is from this judgment that Dr. DiLeo takes the present appeal to this court.

ISSUE PRESENTED
On appeal, Dr. DiLeo asserts several assignments of error of the trial court in affirming the Board's determination. Primarily, appellant contends that the evidence presented by the Board was insufficient to support the Board's finding of violation of the Medical Practice Act on the part of Dr. DiLeo. The issue presented for our review is whether plaintiff met its burden of proving that, based on evidence in the record, Dr. DiLeo was in violation of the Medical Practice Act, La.R.S. 37:1261, et seq. We find that plaintiff failed to sustain its burden.

APPLICABLE LAW
The purpose of enactment of the Medical Practice Act is set forth in La.R.S. 37:1261, which provides:
Recognizing that the practice of medicine, osteopathy, surgery, and midwifery is a privilege granted by legislative authority and is not a natural right of individuals, the state of Louisiana deems it necessary as a matter of policy in the interests of public health, safety, and welfare to provide laws and provisions covering the granting of that privilege and its subsequent use, control, unprofessional, improper, unauthorized, and unqualified practice of medicine and osteopathy and from unprofessional conduct of persons licensed to practice medicine, osteopathy, surgery, and midwifery.
As authority for the suspension of Dr. DiLeo's license, the Board relies on three sections of La.R.S. 37:1285, which provide in pertinent part as follows:
A. The board may refuse to issue, or may suspend or revoke any license or permit, or impose probationary or other restrictions *165 on any license or permit issued under this Part for the following causes:
* * * * * *
(6) Prescribing, dispensing, or administering legally controlled substances or any dependency-inducing medication without legitimate medical justification therefor or in other that a legal or legitimate manner; (12) Professional or medical incompetency; (14) Continuing or recurring medical practice which fails to satisfy the prevailing and usually accepted standards of medical practice in this state.
The Board found Dr. DiLeo guilty of each of these charges, and stated in its written reasons for the decision:
Our review of the testimony and other evidence makes it clear that Dr. DiLeo violated accepted medical standards in the cases reviewed by the Board. Dr. Stewart's expert opinion was that Dr. DiLeo's prescribing practices were not medically justified. Dr. Mottram did not endorse Dr. DiLeo's practices. The affirmative part of his testimony was to the effect that what Dr. DiLeo did was not unreasonable at that time and place. This, of course, is an application of the locality rule, which is not the standard observed by the Board.
In reaching this conclusion, the Board relied on the testimony of the prosecution's chief witness, Dr. Linda Carlton Stewart, a Board certified family practitioner and an addictionologist by profession. The trial court affirmed the Board's decision, and stated in its reasons for judgment:
It is within the power of the Board to believe and assign greater weight to the testimony of one witness over that of another. Accordingly, the Board had the discretion to believe Dr. Linda Carlson Stewart over Dr. Patrick Edward Mottram. Adequate evidence of record supports the Board's reasons and conclusions either directly or by implication. The Board examined 8 cases of prolonged prescription of controlled substances by Dr. DiLeo. The record supports that prescribing anorectics, benzodiazepine and narcotic analgesics for extended periods is medically unjustified and ergo illegal. Dr. Stewart's testimony indicates that no legitimate medical purpose existed for the continued prescription of the drugs that Dr. DiLeo prescribed. Dr. Mottram's testimony that Dr. DiLeo's treatment was not unreasonable in the St. Bernard Parish area was rejected. The Board had the discretion to believe Dr. Stewart because, inter alia, the evidence does establish that Dr. DiLeo's records respecting the 8 patients were inadequate to justify the continued prescriptions. The Board's decision is thus not arbitrary, capricious or an abuse of discretion.
The scope of appellate review of action taken by an administrative agency is limited to a determination of whether the decision was unreasonable, arbitrary or capricious or amounted to an abuse of discretion. Delta Bank and Trust Co. v. Lassiter, 383 So.2d 330 (La.1980); Montalbano v. Bd. of Medical Examiners, 560 So.2d 1009, 1011 (La.App. 4th Cir.1990). Further, in reviewing such actions, courts must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession. Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La.App. 4th Cir.) writ denied, 450 So.2d 359 (La. 1984). However, the findings of the Board must be supported by evidence in the record to prove the existence of those facts essential to establish the validity of charges levied against the accused doctor.

DISCUSSION
The only evidence introduced by plaintiff was the expert testimony of Dr. Linda Carlton Stewart, an addictionologist with a family practice in Baton Rouge. Dr. Stewart reviewed the charts of the eight patients of Dr. DiLeo, and found that in seven of these instances, the patients were being treated for chronic pain, of varying degrees of severity. Dr. Stewart did not dispute that these patients suffered from legitimate chronic pain. In these seven cases, the patient was prescribed over a period of months or years a *166 Schedule II narcotic analgesic, in combination with drugs such as Valium and Xanax for anxiety or nervousness. Dr. Stewart concluded based on her review of the medical charts that Dr. DiLeo had prescribed this pain medication without medical justification. Although she found that the dosage given was not excessive, she found that the duration of the medicines prescribed was for too long a period of time and could lead to addiction and withdrawal symptoms.
Dr. Stewart admitted, however, that there are no written standards published which indicate how long a patient with chronic pain may be treated with pain medication, although she stated that the Physician's Desk Reference did indicate that the drugs prescribed by Dr. DiLeo were intended for short term use. Dr. Stewart further acknowledged that there are various schools of medical thought concerning the length of time patients may be treated with pain medication.
The eighth patient whose medical charts were reviewed by Dr. Stewart received prescriptions for Didrex, an anoretic used for weight loss, as well as for Xanax. Dr. Stewart found Dr. DiLeo properly prescribed Didrex based on the procedures set forth by the Board, and the patient's chart indicated she was examined regularly and actually lost a substantial amount of weight. However, Dr. Stewart was of the opinion that it was improper for Dr. DiLeo to prescribe both Didrex and Xanax at the same time as one was a stimulant and the other a depressant.
Five of the eight patients whose medications were questioned testified before the Board, and each stated that they suffered from chronic pain based on a variety of causes and were satisfied with the treatment given by Dr. DiLeo. One of the patients, Charles E.[1], testified that while working as an iron worker, he fell over 43 feet to the concrete, and sustained 153 fractures, including 93 facial fractures, and shattered his knees, ankles and left femur and has been through 10 operations for his fractures. The patient also lost 95 percent of his left eye. He testified he is in chronic pain, and is unable to get relief from pain clinics. He stated he continues on daily pain medication from another physician after Dr. DiLeo gave up his privileges to prescribe Schedule II and III drugs in 1990. Charles E. testified that Dr. DiLeo took him off Percodan at one point, and he did not experience withdrawal symptoms.
Catherine L. testified she was a patient of Dr. DiLeo's who punctured her hand and suffered nerve damage. Dr. DiLeo put her on Percocet for pain and gradually decreased the dosage. He stopped all pain medication after six months, and the patient testified she suffered no withdrawal symptoms when the medication was stopped.
The record also contains the testimony of Dr. Patrick Mottram, a board certified internist and endocrinologist who maintained a practice in New Orleans East and St. Bernard and worked with general practitioners during the course of his practice. He reviewed the charts of the eight patients treated by Dr. DiLeo, and testified that they were within the usually accepted standard of medical practice and were reasonable under the circumstances. Although Dr. Mottram admitted that the theories on prescribing pain medication for chronic pain have evolved over the years and that he no longer treated chronic pain with the long term use of narcotic pain medication, he testified that at the time these patients were treated, the treatments were medically justified and there was no violation of usually accepted standards of medical practice by Dr. DiLeo.
Dr. DiLeo also testified before the Board, and stated that he had practiced medicine in St. Bernard for over 40 years without incident. He admitted that he had done no continuing medical education, although he stated that he studies the numerous medical journals which are sent to his office. Dr. DiLeo stated that he voluntarily surrendered his DEA license to prescribe Schedule II and III drugs in 1990, when two federal agents came to his office.
Although we acknowledge the Board's determination must be affirmed in the absence of an abuse of discretion, we find that such a determination must nevertheless be *167 supported by competent, substantial evidence. In the present case, we have carefully reviewed the record, including the testimony and documentary evidence and find that the evidence to be insufficient to support the determination of the Board finding Dr. DiLeo guilty of the three charges brought against him. Even accepting the credibility determinations made by the Board in favor of Dr. Stewart, we nevertheless find that plaintiff failed to submit sufficient competent evidence to support the Board's findings.
First, we find no reasonable basis in the record for the Board's finding that Dr. DiLeo prescribed legally controlled medicines without legitimate medical justification in violation of La.R.S. 37:1285(A)(6). Although we agree with the reasoning set forth Wilcox v. Louisiana State Board of Medical Examiners, supra, that this statute is not unconstitutionally vague, we find that the court's decision in Wilcox contemplates that sufficient evidence of a violation of the statute will be presented prior to finding a physician to be guilty of such violation. This statute is penal in nature and allows the Board to suspend or revoke a physician's license to practice medicine and impose a fine as it sees fit. In order for enforcement of the statute to pass constitutional muster, the Board must prove by competent evidence the appropriate standard of care and how it has been violated in this particular incident. To pass constitutional scrutiny, the Board may not rely solely upon the subjective interpretation of one physician who failed to cite to any regulation or statute that had been violated.
The record in the present case shows that each of the patients who were given these medications suffered from chronic pain in varying degrees of severity. There was no showing that these patients did not continue to experience pain or were not in need of the medicine. There was further no showing that the medications were administered illegally or in an illegitimate manner.
The only evidence presented to support a finding that the prescribing of the medicines was unjustified is Dr. Stewart's testimony that the duration of the medicines given were too long. Even assuming this testimony to be true, this testimony standing alone is insufficient to establish a violation of Act. Dr. Stewart admits that there are no written standards published governing how long pain medicine is to be prescribed, and she acknowledges that there are differing schools of thought on the subject. There is no evidence in the record to indicate what the medical standard is regarding the length of time that chronic pain may be treated with narcotic pain medication.
Further, Dr. Mottram testified that Dr. DiLeo's treatment of these patients was reasonable, and was not in violation of the standard of care. Although the Board in its decision makes much of the fact that Dr. Mottram no longer uses narcotic medication for the treatment of chronic pain, the record fails to contain any evidence whatsoever of what constitutes the appropriate standard for the prescribing of such medication.
We find that evidence of an extended duration of pain medication prescriptions without proof that the prescriptions were rendered in an illegal or illegitimate manner, is insufficient to establish a violation of La. R.S. 37:1285(A)(6). Under these circumstances, in the absence of an affirmative showing of a breach of the standard of care with regard to prescribing narcotic pain medication, we find that the Board's determination that Dr. DiLeo violated the Medical Practice Act to be unreasonable and an abuse of its discretion.
Secondly, with regard to the Board's determination that Dr. DiLeo is guilty of a violation of La.R.S. 37:1285(A)(14), we fail to find factual support in the record for this finding. The Board found that Dr. DiLeo's medical practice failed to satisfy the prevailing and usually accepted standards of medical practice in the state of Louisiana. However, as previously stated herein, the Board failed to introduce sufficient evidence as to what constitutes "prevailing and usually accepted standards of medical practice." Although the Board relies on the testimony of Dr. Stewart to support its determination, the testimony of this sitness alone fails to indicate the appropriate accepted standards. Dr. Stewart testified that the medications *168 were prescribed for too long, but failed to indicate what constitutes an appropriate length of time for the prescription of these medicines. Further, the witness acknowledged that there are differing schools of thought on the subject, as is evidenced by the "National Pain Survey" submitted into evidence by Dr. DiLeo.
Finally, with regard to the Board's determination that Dr. DiLeo was in violation of La.R.S. 37:1285(A)(12), professional or medical incompetency, we find no support in the record for such a determination. In its reasons for judgment, the Board states in part:
On the third charge, professional and medical incompetency, the Board find that Dr. DiLeo is a physician who has failed to maintain any program of continuing medical education, other than reading the journals which came to his office, and who has therefore not kept abreast of developments in this profession; who keeps medical records so inadequate that his own expert witness was unable to verify the diagnoses made in the cases involved herein; and whose DEA license to prescribe the types of drugs involved in this case has been revoked. Without further and immediate medical education, Dr. DiLeo is not competent to practice medicine in this State. He is, therefore, guilty of the third charge.
However, there is nothing in the record to show, and appellee concedes as much, that the Board has ever promulgated a requirement for continuing medical education throughout the medical profession. Without such a requirement, the Board's determination that a physician is medically or professionally incompetent for failing to maintain such education is unreasonable, arbitrary and capricious. Dr. DiLeo testified that he kept up with developments by reading medical journals, and there is nothing in the record to show that his failure to do something more constitutes medical incompetence.
Further, we find that the record in this case shows that Dr. DiLeo conducted examinations of these patients on a regular basis and kept adequate medical records of the treatment of his patients. In fact, Dr. Stewart testified that Dr. DiLeo's medical records were adequate and more detailed than most general practitioners. In addition, the record shows that Dr. DiLeo was acting in good faith in prescribing medications to alleviate the pain symptoms experienced by these patients. This is not a situation where a physician was prescribing pain medication without an examination or a reasonable belief that the patient was in pain or in need of the medication. The record shows that the patients being treated had suffered serious injury or other medical complications which supported the use of pain medications. There was no evidence presented that the prescriptions were being diverted or were improperly used. Further, although Dr. DiLeo's DEA license to prescribe Schedule II and III medications has been surrendered, this action was undertaken voluntarily by Dr. DiLeo and there has been no showing that it was based on medical incompetence. Under the circumstances presented here, we fail to find sufficient evidence in the record to support the Board's finding of professional or medical incompetence.

CONCLUSION
We find that the record fails to contain sufficient evidence to sustain the Board's determination that Dr. DiLeo was guilty of violating the Medical Practice Act. Accordingly, for the reasons stated herein, we find that the Board's determination that Dr. DiLeo was guilty of all three charges brought against him to be arbitrary, capricious, and an abuse of the Board's discretion. Therefore, the judgment of the trial court which affirms the decision of the Board is hereby reversed. Judgment is hereby rendered in favor of Dr. Lucas A. DiLeo and against the Louisiana State Board of Medical Examiners, dismissing all charges against Dr. DiLeo. The Board is to bear all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] The patient's initials were used in transcript of the evidentiary hearing to protect their identity.