# ROSS *v.* STEWART.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 140. Submitted January 23, 1913.—Decided February 24, 1913.

Congress has power to invest a townsite commission with power to determine contests between rival claimants to lots in a townsite in Indian lands acquired and thrown open to settlement.

The acts providing for designation, surveying and platting townsites in the Cherokee lands and disposing thereof plainly show the intent of Congress to commit the appraisal and disposal of the lots to the commission created by the acts, subject to supervision by the Secretary of the Interior.

The provisions of the acts do not contemplate the determination of conflicting possessory claims without inquiry into the merits.

All reasonable presumptions must be indulged in support of the action of administrative officers to whom the law entrusts proceedings determining priority of claims; and in the absence of material error of law, or of misrepresentation or fraud practiced on or by them, their action should stand approved by the court.

The presumption is that a contest has been commenced in time, otherwise it would not have been entertained.

Where the party to a contest and his attorney have been notified that no answer had been filed on his behalf, and they take no steps to correct this omission, and the case is decided adversely to him, the failure to file the answer furnishes no ground for avoiding the decision.

One failing to answer raises no issue entitling him to a hearing, and he cannot afterwards be heard to complain that he was denied a hearing.

A hearing and decision on a contest where the contestant files no answer after notice is not an *ex parte* proceeding, but an adversary proceeding.

Misrepresentation and fraud that will entitle a contestant to open a decision in a land contest must be such as prevented him from presenting his side of the controversy or the officer deciding it from considering it. It is not enough to charge falsity in pleadings or perjury of witnesses. *Estes* v. *Timmins,* 199 U. S. 391.

25 Oklahoma, 611, affirmed.

THE facts, which involve the title to land in a townsite of the Cherokee country and the power of the Townsite Commission to settle contests, are stated in the opinion.

*Mr. W. H. Kornegay* for plaintiff in error.

*Mr. Joseph C. Stone, Mr. Charles G. Watts* and *Mr. Jess W. Watts* for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

A lot in the townsite of Sallisaw, in the Cherokee Nation, is here in dispute. The conflicting claims are both founded upon the legislation of Congress providing for the designation, survey and platting of townsites in the Cherokee lands, and the appraisal and disposal of the lots. Acts, June 28, 1898, 30 Stat. 495, 500, c. 517, § 15; May 31, 1900, 31 Stat. 221, 237–238, c. 598; July 1, 1902, 32 Stat. 716, 722, c. 1375, §§ 38–58, 65. After the townsite was

designated, surveyed and platted the parties here severally sought to purchase lot 7 in block 39, each asserting a preference right by reason, as was alleged, of having a possessory claim and owning the improvements. Ross' application was first in the order of presentation, and the Townsite Commission, which was then charged with the work of appraisal and disposal, scheduled the lot to him. Stewart's application was refused, subject to her right to contest Ross' claim before the commission, the date of the refusal not being shown in this record. She instituted such a contest, due notice being given to Ross, and the lot was ultimately awarded to her by the Indian Inspector for the Indian Territory, who in the meantime [1] had been charged with the duty of completing the work of the Townsite Commission under the direction and subject to the approval of the Secretary of the Interior. Following this award a patent, bearing the Secretary's approval, was issued to Stewart by the principal chief of the Cherokee Nation conformably to §§ 58 and 59 of the act of 1902. Ross subsequently commenced this suit in a state court in Oklahoma (the newly admitted State including the town of Sallisaw) to have Stewart declared a trustee for him and to enforce a conveyance. To an amended petition, setting forth the facts just stated and containing other allegations presently to be mentioned, the defendant interposed a demurrer, which the court sustained. A judgment for the defendant was entered and was affirmed by the Supreme Court of the State, 25 Oklahoma, 611, whereupon the plaintiff sued out this writ of error.

We are asked to say, as was the state court, that the Townsite Commission was without jurisdiction to entertain or pass upon the contest resulting from the conflicting applications to purchase, and that such a controversy

---

[1] See H. R. Doc. No. 5, 59th Cong., 1st Sess., p. 721; Sen. Doc. No. 396, part 4, 59th Cong., 2nd Sess., p. 337.

could be determined only in the courts. But, like the state court, we are unable so to say. No time need be spent in upholding the power of Congress to invest the Townsite Commission with such authority, for our prior decisions leave no doubt upon that subject. It is merely a question of what Congress intended by the legislation adopted. In this connection it is well to remember that no individual, even if an occupant and owning the improvements, had more than a possessory claim to the land to which the legislation was to be applied, and that all possessory claims were held subject to the superior ownership in fee, which was in the Cherokee tribe. Recognizing that this was so, and regarding the possessory claimants as entitled to favorable consideration, Congress made provision for according to them a preference right to purchase the lots covered by their improvements, and for selling such lots at public auction if the preference right was not exercised within a limited period, the sale in either event to be for the benefit of the tribe as owner of the fee. In the act of 1900 the duties and authority of the Townsite Commission were stated as follows: "As soon as the plat of any townsite is approved, the proper commission shall . . . proceed to make the appraisement of the lots and improvements, if any, thereon, and after the approval thereof by the Secretary of the Interior, shall, under the supervision of such Secretary, proceed to the disposition and sale of the lots in conformity with any then existing act of Congress or agreement with the tribe approved by Congress, . . ." This provision and the other townsite portions of the acts of 1898 and 1900 became by express reference a part of the act of 1902, with qualifications not here material, and that act also declared: "All things necessary to carry into effect the provisions of this Act, not otherwise herein specifically provided for, shall be done under the authority and direction of the Secretary of the Interior." Shortly

following this legislation the Secretary promulgated regu-
lations for the guidance of the commission in the discharge
of its duties, and gave express directions therein for the
hearing and determination by the commission of contests
between claimants asserting conflicting rights to purchase
the same lot. These regulations remained in force until
after the act of March 3, 1905, 33 Stat. 1048, 1059, c. 1479,
when, upon the abolition of the commission, they were
altered and superseded to the extent that the Indian In-
spector for the Indian Territory was charged with the duty
of completing the work of the commission under the direc-
tion and subject to the approval of the Secretary of the
Interior. It is not suggested that the authority to hear
and determine contests was diminished or enlarged by
this change, and therefore it will suffice to speak only of
the authority of the commission.

The acts of 1898, 1900 and 1902 show very plainly that
it was the purpose of Congress to commit to the commis-
sion the appraisal and disposal of all lots, whether occupied
or vacant, improved or unimproved, save as its work was
to be done under the supervision of the Secretary of the
Interior. More than this, there was an express command
that the commission should proceed "in conformity with
any then existing act of Congress or agreement with the
tribe approved by Congress." This meant that the com-
mission should respect and give effect to the congres-
sional legislation regulatory of the disposal and sale of
the lots. The provisions according preference rights to
possessory claimants and directing sales at auction if
those rights were not exercised within the prescribed
period were a part of that legislation, and conformity to
them necessarily involved an ascertainment of what lots
were held under possessory claims and of who in each
instance was the rightful claimant. True, there was no
direct provision for such an ascertainment, but by neces-
sary implication the duty of making it was cast upon the

commission to whom the command for conformity was addressed. Plainly, it was not contemplated that every claim of a preference right should be granted without inquiry into its merits, or that as between conflicting claims seasonably presented one should be granted and the other rejected without ascertaining which was the rightful one. The suggestion that such controversies were cognizable only in the courts finds no support in any statutory provision, is opposed to the plain implication of this legislation, and ignores the settled practice of Congress to commit such questions to the determination of administrative officers. As has been seen, the Secretary of the Interior, when issuing regulations for the guidance of the commission, took the view that it was to hear and determine such contests, subject to his supervisory authority, and in our opinion that was the correct view.

We come then to the further contention that, even conceding the jurisdiction of the administrative officers to entertain and pass upon the contest, the petition discloses a case which entitles the plaintiff to call in question their decision and to insist that the defendant, who obtained a patent under that decision, be declared a trustee for him and required to transfer the title to him. The test to which the petition must be subjected is this: All reasonable presumptions must be indulged in support of the action of the officers to whom the law entrusted the proceedings resulting in the patent, and unless it clearly appears that they committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices, and that as a result the patent was issued to the defendant when it should have been issued to the plaintiff, their action must stand. *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Marquez* v. *Frisbie*, 101 U. S. 473; *Quinby* v. *Conlan*, 104 U. S. 420, 426; *Baldwin* v. *Starks*, 107 U. S. 463; *Lee* v. *Johnson*, 116 U. S. 48; *Sanford* v. *Sanford*, 139 U. S. 642.

The petition cannot be commended as a model. It is wanting in certainty and sets forth a good many conclusions which have no support in the facts alleged. It is copied at length in the opinion of the state court, and it will suffice here to state the substance of such parts as have a bearing upon the arguments advanced to sustain the contention last stated.

It now is said that the contest was entertained in violation of the established regulations in that it was not instituted within the time prescribed. This objection was not made in the petition, and for aught that there appears it may have no basis in fact. The regulations limited the time to ten days after notice of the refusal of the conflicting application to purchase. The petition, although showing when the defendant's application was presented and when the contest was begun, does not show when her application was refused or when she was notified. In this situation the presumption is that the contest was begun in time, else it would not have been entertained.

The contest was begun by filing with the commission a written complaint setting forth the grounds of contest, and the plaintiff was duly served with a copy and notified that he should file, within ten days, such answer as he desired to make. He was in jail at that time and employed an attorney to represent him. The attorney engaged to do whatever was necessary to protect the plaintiff's rights, and afterwards assured him that an answer had been filed and the hearing would come later. A year and a half thereafter the attorney made inquiry of the Indian Inspector who then was completing the work of the commission, which in the meantime had been abolished, concerning the contest and was informed that the lot was "in litigation" and he would be advised as soon as action was taken, and later in the same month the inspector informed him that the plaintiff had forfeited his right by not filing an answer and a formal decision to that effect would be rendered after

the first of the succeeding month.  Information about the absence of an answer was also given to the plaintiff about that time.  But it does not appear that he or his attorney took any action then or thereafter either to show that an answer had been filed or to correct the omission if none had been filed, although it does appear that more than seven months elapsed before the patent was issued. Whether in fact an answer was filed is left uncertain, for it is alleged that the plaintiff believes one was filed, that the contest record does not show such a filing, that no answer is in the files, and "that plaintiff's attorney either failed to file an answer in the contest proceeding or that said answer, having been filed, was disregarded."  In this situation it is urged (a) that the inspector, by stating that the lot was in litigation, caused the plaintiff's attorney to believe that an answer was on file and thereby misled him; (b) that if no answer was filed it was an unfortunate omission for which the plaintiff was not responsible, and if one was filed it was wrongfully disregarded; and (c) that the contest was decided against the plaintiff without a hearing or an opportunity to be heard.

The statement attributed to the inspector, that the lot was in litigation, doubtless meant, and only meant, that the contest was pending and undecided.  That was its natural import, and it was equally true whether the plaintiff had answered or was in default.  Therefore, the claim that his attorney was misled is not even colorable.  If the question whether an answer was filed be an open one, the allegations of the petition bearing thereon are so uncertain that effect must be given to the decision that none was filed.  Not only is there a strong presumption that the decision was right, but the admission that no answer is in the files and that the contest record does not show the filing of one goes far to sustain the decision independently of the presumption.  Thus, the absence of an answer must be regarded as accounted for only on the theory that the

attorney omitted to file one.  Of that it is to be observed, first, that the omission was by the plaintiff's chosen representative; second, that there is no suggestion that it was in any wise attributable to the defendant or the administrative officers before whom the contest was pending, and, third, that it was called to the attention of the plaintiff while it was still within the power of the administrative officers to relieve him from the default, if the circumstances justified such action, and to proceed to a hearing and disposition of the contest as if the omission had not occurred, and yet no effort was made by him to secure action of that kind.  In these circumstances the failure of the attorney to file an answer furnishes no ground for avoiding the decision.  It is idle to say that the plaintiff did not have a hearing or an opportunity to be heard.  He was notified of the contest, was served with a copy of the complaint, and was cited to answer, all in conformity with the regulations, and he could not have failed to understand that to make default would be in the nature of a confession of his adversary's claim and an abandonment of his own.  Failing, as he did, to answer or interpose any objection to the contest, he raised no issue entitling him to a hearing.  His trouble is, not that he was not accorded a hearing or an opportunity to be heard, but that he did not avail himself of the opportunities afforded.

In the petition the plaintiff now does what he failed to do in the contest, that is, takes issue with the allegations of the complaint therein by denying that they were true; and he insists that in this way the petition shows that misrepresentation and fraud were practiced upon the administrative officers whereby the patent was issued to the defendant when it should have been issued to him.  The insistence cannot be sustained.  The contest was not *ex parte*, as were the proceedings involved in *United States v. Minor*, 114 U. S. 233, 240–243; *Sanford v. Sanford*, 139 U. S. 642, 644, 650, and *Svor v. Morris*, *ante*, p. 524, but

was an adversary proceeding to which the plaintiff was a party, of which he had due notice, and in which he had full opportunity to meet and controvert the very allegations he now says were untrue. The question whether they were true or otherwise is one the decision of which was committed by law to the administrative officers as a special tribunal, and they, as is conceded, decided that the allegations were true, their action being in the nature of a judicial determination. The applicable rule in such a case is, that the misrepresentation and fraud which will entitle the unsuccessful claimant to relief against the decision and resulting patent must be such as have prevented him from fully presenting his side of the controversy, or the officers from fully considering it; and it is not enough that there may have been false allegations in the pleadings or that some witness may have sworn falsely. *Vance* v. *Burbank,* 101 U. S. 514, 519; *Lee* v. *Johnson,* 116 U. S. 48; *Estes* v. *Timmons,* 199 U. S. 391, 396; *Greenameyer* v. *Coate,* 212 U. S. 434, 444; *Durango Land & Coal Co.* v. *Evans,* 80 Fed. Rep. 425, 430.

The petition contains some allegations descriptive of the complaint in the contest and of the matters set forth in it, and it is urged that in this way it appears that, upon her own showing, the defendant did not have such a possessory claim as entitled her to a preference right of purchase, and therefore that the officers committed an error of law in sustaining the contest. Of this it seems enough to say that the petition neither sets forth a copy of the complaint nor purports to give the whole of its substance, and that upon contrasting what the petition does say of the complaint with the applicable sections of the act of 1902 it does not appear that the contest was ill founded. For aught that is disclosed, the complaint and the proof in support of it may have fully established the defendant's right to purchase.

Other contentions advanced in the brief of the plaintiff

have been considered and found so far untenable that their discussion here would serve no useful purpose.

*Judgment affirmed.*