George **BARNETT**, Jr., et al., Plaintiffs,

v.

The **RIGGS NATIONAL BANK OF WASHINGTON, D. C.**, et al.,
Defendants.

Wanda **CURTIS** et al., Plaintiffs,

v.

The **RIGGS NATIONAL BANK OF WASHINGTON, D. C.**, et al.,
Defendants.

Civ. A. Nos. 927–54, 919–54.

United States District Court.
District of Columbia.

July 10, 1957.

Edward L. Carey, Wesley E. Disney, Washington, D. C., W. F. Semple, Tulsa, Okl., for plaintiffs.

Hogan & Hartson, Washington, D. C., by James C. Rogers, Washington, D. C., for Riggs Nat. Bank.

Francis C. Brooke, William A. Underhill, Washington, D. C., for Yahdeka Byrd.

Richard L. Walsh, Washington, D. C., for minor defendants.

LAWS, Chief Judge.

In the above-entitled cases, consolidated for trial, motions have been submitted as follows: In the Barnett case, plaintiffs have moved for summary judgment against defendant Riggs National Bank (hereinafter sometimes referred to as "Riggs") and to dismiss co-defendant Yahdeka Byrd's counterclaim; defendant Riggs has moved for summary judgment against plaintiffs and Yahdeka Byrd; and Yahdeka Byrd has moved for summary judgment against defendant Riggs and plaintiffs. In the Curtis case, plaintiffs have moved for summary judgment against Riggs; and Riggs has moved for summary judgment against plaintiffs. The points of law are the same in both cases.

About 1913 Eastman Richard and his daughter, Jennetta Richard Barnett, each owned property in Oklahoma by virtue of certain Acts of Congress which carried into effect treaty provisions with the Indians of the Five Civilized Tribes. Since both were full blooded Indians, their property was restricted by Act of Congress and was administered by the Secretary of the Interior. Oil leases were made in respect of the lands, and the royalties received were invested in Liberty Bonds by the Secretary of the Interior, who held legal title to the bonds.

On October 14, 1925, Jennetta Richard Barnett executed a trust instrument with The Riggs National Bank of Washington, D. C., as trustee. Eastman Richard also executed a similar trust. The Liberty Bonds held by the Secretary of the Interior comprised the corpus of each trust. In each case, the trust agreement, together with a request for removal of restrictions on the Bonds, was transmitted through the Commissioner of Indian Affairs to the Secretary of the Interior for his approval. The Commissioner recommended that the restrictions be removed and the bonds delivered to Riggs. The Assistant Secretary endorsed each

memorandum of the Commissioner "Approved and returned to the Commissioner of Indian Affairs for action accordingly:". The Riggs National Bank then executed the instruments and received the Liberty Bonds. Jennetta Richard Bar-. nett died intestate on September 24, 1932. Eastman Richard died March 31, 1934. These actions to set aside the trusts were commenced in March, 1954.

In both cases, plaintiffs, who are next of kin of the parties who executed the trusts, and in the Barnett case, defendant Yahdeka Byrd, surviving spouse of Jennetta Richard Barnett, contend the trust instruments were void, for the reason that the Secretary of the Interior in 1925 had no authority to approve a trust, that his transfer of the funds amounted to a delegation of duty imposed upon him by Act of Congress. This argument is supported by reference to an opinion of the Attorney General (36 Op.Atty.Gen. 98) and that of the Solicitor of the Interior Department (by letter to the Secretary of the Interior dated June 26, 1929). It is agreed the Secretary of the Interior had authority to release restrictions on the funds in question and to turn them over to Jennetta Richard Barnett and Eastman Richard, who then may have legally created a trust. (See opinions of the Attorney General and the Solicitor of the Interior, supra). However, the claim is made by those attacking the trusts that the record before the Court indicates no such release was given.

█ The question of removal of restrictions imposed on the properties of the Indian settlors of the trusts obviously is one of fact, as well as of law. There is evidence strongly tending to indicate that the restrictions were in fact removed. In each case there appears a letter from the settlor of the trust to the Secretary of the Interior requesting removal of restrictions on .the Liberty Bonds and delivery of them to Riggs. Also, in each case, there is memorandum from the Commissioner of Indian Affairs discussing the trust and recommending

that the restrictions be removed and the bonds delivered to Riggs. If it be granted the Secretary of the Interior actually approved the specific trusts, his acts in so doing would not render the trusts void if before or at the same time he also removed restrictions imposed on the corpus of the trust. His acts in approving the trusts may be regarded as an administrative determination by the Secretary that the removal of the restrictions was for the benefit of the particular Indians. See Pub.L.No. 140, 60th Cong., 1st Sess., Sec. 1 (May 27, 1908), 35 Stat. 312.

██ No particular form for removal of restrictions is required, and the intention of the Secretary to remove the restrictions appears supported by the fact of the transfer of the bonds. See Nail v. American National Bank of Bristow, Oklahoma, D.C.N.D.Okl.1938, 22 F.Supp. 977. The view that the restrictions were removed is further supported by the legal presumption that a public officer acts in accordance with the law and not in violation of it. Ross v. Stewart, 1913, 227 U.S. 530, 33 S.Ct. 345, 57 L.Ed. 626.

The Court is of opinion that the weight of the evidence before it indicates a removal of the restrictions on the properties constituting the corpus of each of the two trust estates involved.

█ A further point asserted is that the trust agreements are illegal because they violate the rule against perpetuities. The arguments in support of the motions for summary judgment concede the claim in this form to be incorrect. But it is argued that the spendthrift provisions of the trust are against public policy and render the trusts illegal. The Court finds nothing in the trust agreements which may be said to be against public policy. On the contrary, the policy of Congress appears to favor spendthrift provisions in trusts created by restricted Indians. Section 4 of the Act of January 27, 1933, reads in part:

"* * * neither the corpus of said trust nor the income derived

therefrom shall, during the restriction period provided by law, be subject to alienation, or encumbrance, nor to the satisfaction of any debt or other liability of any beneficiary of such trust during the said restriction period." 47 Stat. 777, 778.

By this same Act, Congress also indicated its approval of any trusts previously made by Indians which had been approved by the Secretary of the Interior.

From what has been stated, the motions for summary judgment by plaintiffs and co-defendant Yahdeka Byrd, based upon alleged illegal approval of the trust agreements by the Secretary of the Interior, will be denied.

The parties attacking the trusts make the further point that such trusts were induced by fraud. The trustee maintains such claims of fraud are barred by laches, pointing out that these suits were brought approximately twenty-nine years after the trusts were created and that due to this long delay witnesses are not now available to refute claims of fraud. This defense of laches clearly seems available unless it can be shown that the delay was due to incompetency on the part of those claiming fraud. Yahdeka Byrd claims incompetency by court decree and offers to establish further facts tending to show incompetency. The claims of the other parties who attack the trusts do not clearly assert incompetency, but since the point is suggested, opportunity will be given them to establish, within thirty days, any specific claims of incompetency. Accordingly, on the present record, defendant Riggs' motion for summary judgment based on laches will be denied.

Plaintiffs' motion to dismiss Yahdeka Byrd's counterclaim is based on the contention that this Court has no jurisdiction to grant a claim against the next of kin of Jennetta Richard Barnett, but that any payments coming to them must be accounted for through the Secretary of the Interior. The Court finds no legal basis for this contention. In light of the Court's view that the Secretary of the Interior released the restrictions on the property forming the corpus of the trust, if it should eventuate that due to fraud the trust created by Jennetta Richard Barnett should be set aside, the funds would be distributed through her estate in accordance with the decree of the Court of the County of McIntosh, State of Oklahoma, of December 15, 1932. (Probate No. 4013). Since Yahdeka Byrd thereby would be entitled to one-third of her estate as of the time of her death, he would have legal right to an accounting for one-third of any payments of income from the trust monies made to the next of kin of Jennetta Richard Barnett. The Court will deny plaintiffs' motion to dismiss Yahdeka Byrd's counterclaim.