689 So.2d 718 (1997)
Robert E. HOLLADAY, IV, M.D.
v.
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS.
No. 96-CA-1740.
Court of Appeal of Louisiana, Fourth Circuit.
February 19, 1997.
Writ Denied May 1, 1997.
*719 Robert G. Pugh, Jr., Pugh, Pugh & Pugh, L.L.P., Shreveport, Thomas L. Lorenzi, Lorenzi, Sanchez & Rosteet, L.L.P., Lake Charles, for Plaintiff-Appellant Robert E. Holladay, IV, M.D.
Philip O. Bergeron, Adams & Reese, New Orleans, for Defendant-Appellant Louisiana State Board of Medical Examiners.
Before SCHOTT, CIACCIO and WALTZER, JJ.
WALTZER, Judge.
This is an appeal from a judgment of the district court which affirmed in part, reversed in part and modified in part a Louisiana State Board of Medical Examiners' ("the Board") decision imposing disciplinary sanctions on Dr. Robert E. Holladay, IV, M.D. ("Dr. Holladay"). For the reasons stated more fully herein, we partially reverse the district court's judgment and reinstate the Board's October 26, 1995, determination.

STATEMENT OF THE CASE
Dr. Holladay is a practicing orthopedic surgeon, with an office in Shreveport, Louisiana, and Longview, Texas. In early 1990, the Board received several complaints concerning Dr. Holladay's prescription practices. *720 Pursuant to this information, the Board instituted an investigation which included a prescription survey of several pharmacies in the Shreveport area for controlled substance prescriptions written by Dr. Holladay from June 1, 1988 through June 1, 1989. An evaluation of such prescriptions led to the scrutiny of Dr. Holladay's medical charts on ten of the patients identified in that survey.
Based on the results of that survey, the Board filed an administrative complaint charging Dr. Holladay with a number of violations of the Medical Practice Act, La. R.S. 37:1261, et seq. Specifically, the Board charged Dr. Holladay with prescribing controlled substances in such a manner as to demonstrate medical practice which fails to satisfy the prevailing and usually accepted standards in Louisiana, and which demonstrated professional and medical incompetency. This charge related not only to the nature, amount, frequency and duration of the drugs prescribed, but also to Dr. Holladay's clinical judgment, treatment, and management of each case. The Board also charged Dr. Holladay with making a false statement on his 1991 and 1992 renewal applications for his Louisiana medical license.
On April 6, 1995, August 25, and August 26, 1995, a panel of the Board held an evidentiary hearing to review Dr. Holladay's case. The Board examined nine cases of prolonged prescription of controlled substances by Dr. Holladay. Additionally, the Board carefully considered evidence, including: (1) Dr. Holladay's testimony, (2) the testimony of four expert witnesses; one for the complainant and three for the respondent, (3) the testimony of two members of Dr. Holladay's office staff, (4) Dr. Holladay's charts of each patient at issue, (5) a survey of the prescriptions written for each patient during the period of treatment under consideration, (6) several articles relating to the use of narcotics for the treatment of nonmalignant pain, and (7) regulations adopted in Texas and California relative thereto.
Following the evidentiary hearing, by written decision issued on October 30, 1995, the Board suspended Dr. Holladay's medical license for three months, and thereafter placed his license on probation for a period of three years. The Board also required that Dr. Holladay he take an approved course in pain management and obtain 50 hours of continuing medical education for each year during his probation period and pay a $5,000.00 fine.
As grounds for suspending Dr. Holladay's license, the Board found three independent violations of section of La. R.S. 37:1285, including: (1) Dr. Holladay's failure to advise the Board on his Louisiana renewal application of an investigation undertaken by the Texas Board of Medical Examiners ("Texas Board"), a violation of La. R.S. 37:1285(A)(3); (2) Dr. Holladay's prescription of controlled substances in excess of any legitimate medically justifiable manner and in contravention of the known warnings, dangers, and contraindications pertaining to such medications, a violation of La. R.S. 37:1285(A)(6); and (3) Dr. Holladay's failure to satisfy prevailing and generally accepted standards of medical practice in Louisiana, a violation of La. R.S. 37:1285(A)(14).
Dr. Holladay subsequently filed an appeal from this decision to the district court and further applied for a stay of the suspension of his license, which the trial court granted on December 4, 1995. This matter was submitted to the Civil District Court, Parish of Orleans, on briefs and oral argument. By judgment dated May 15, 1996, Judge Robert A. Katz affirmed in part, reversed in part, and modified in part the Board's decision.
The district court maintained the Board's decision to the extent that it found Dr. Holladay in violation of La. R.S. 37:1285(A)(3), by failing to advise the Board on his Louisiana renewal application of an investigation undertaken by the Texas Board. The district court reversed, however, that portion of the Board's decision finding Dr. Holladay in violation of La. R.S. 37:1285(A)(6) and (14), concerning his treatment and prescribing practices of the specified patients at issue. Additionally, the district court modified the sanctions imposed by the Board, eliminating from such decision the three year probationary period and the requirement that Dr. Holladay undertake a pain management course acceptable to the Board. It is from this judgment that Dr. Holladay and the *721 Board appeal. Dr. Holladay seeks reversal of the district court's decision affirming the Board's decision that Dr. Holladay violated La. R.S. 37:1285(A)(3), and upholding the three month suspension of Dr. Holladay's Louisiana medical license. The Board seeks reversal of the district court's decision reversing the Board's decision predicated upon La. R.S. 37:1285(A)(6) and (14), and modifying the sanctions imposed by the Board.

SPECIFICATION OF ERRORS
Dr. Holladay's Specification of Error:
1. Whether the record contains sufficient evidence to support the Board's decision and the trial court's judgment that Dr. Holladay was guilty of fraud, deceit or perjury, as a result of his responses to his 1991 and 1992 renewal applications for his Louisiana medical license, in violation of La. R.S. 37:1285(A)(3).
The Board's Specification of Error:
2. Whether the trial court committed reversible error by reversing that portion of the Board's decision predicated upon La. R.S. 37:1285(A)(6) and (14), despite the substantial evidence contained in the record and on a basis other than that authorized by law.
Dr. Holladay's Specification of Error:
3. Whether the Board imposed penalties against Dr. Holladay that were unreasonable, arbitrary, capricious or an abuse of discretion.

STANDARD OF REVIEW
The standard of appellate review of a decision by an administrative agency is distinct from and narrower than that which pertains to general appellate jurisdiction over civil and criminal appeals. Considerable latitude must be afforded administrative agencies to perform functions delegated to them under law, and courts should not intervene unless the administrative agencies' conduct is clearly unreasonable and arbitrary. Montalbano v. Board of Medical Examiners, 560 So.2d 1009 (La.App. 4th Cir.1990); Mayeaux's Food and Sporting Goods, Inc. v. State of Louisiana, Department of Health and Human Resources, 470 So.2d 469 (La. App. 1st Cir.1985). An administrative agency's proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds of reversal or modification. Ross v. Stewart, 227 U.S. 530, 33 S.Ct. 345, 57 L.Ed. 626 (1913); Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La. App. 4th Cir.1984).
The exclusive grounds upon which an administrative determination or decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G), La. Const., 1974, Art. 5, 510(B). Pursuant to La. R.S. 49:964(G), the district court may not reverse or modify an administrative decision unless the decision was arbitrary, capricious, characterized by abuse of discretion, clearly unwarranted exercise of discretion, or manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Where the administrative agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues. La. R.S. 49:964(G).
1. ASSIGNMENT OF ERROR NO. 1: Does the record contain sufficient evidence to support the Board's decision and the trial court's judgment that Dr. Holladay was guilty of fraud, deceit or perjury, as a result of his responses to his 1991 and 1992 renewal applications for his Louisiana medical license, in violation of La. R.S. 37:1285(A)(3)?
Dr. Holladay contends that the Board's decision that he violated the Medical Practice Act by failing to disclose, in his 1991 and 1992 renewal applications for his Louisiana medical license, that he was subject of an investigation by the Texas Board was unreasonable, arbitrary, capricious and an abuse of discretion. Further, Dr. Holladay contends that the penalties imposed, particularly the three month suspension from medical practice, are unreasonable, arbitrary and capricious, and amounts to an abuse of discretion.
*722 Although Dr. Holladay admits that he provided untruthful answers on both the 1991 and 1992 renewal applications, he submits that his withholding of information was a mere oversight, and that because the Texas Board ultimately found no violation of the Texas Medical Practice Act, he should not be sanctioned for his actions; to the contrary, that such finding should be viewed as "exculpatory evidence."
In reviewing the Board's decision, the district court had to determine whether the Board's factual findings were supported by substantial evidence and whether the Board's conclusions and sanctions were arbitrary or capricious or constituted an abuse of its discretion. To reverse the Board's decision, the district court had to find that the Board's factual findings constituted manifest error. Courtney and Courtney, Inc. v. Scott, 589 So.2d 78 (La.App. 2 Cir.1991). To modify the penalties imposed by the Board, the district court had to find that the penalties were arbitrary, capricious, an abuse of discretion, or grossly disproportionate to the offense. La. R.S. 49:964(G)(5); In the Matter of John W. McGowan, 533 So.2d 999 (La.App. 1 Cir. 1988), writ denied, 537 So.2d 1168 (La.1989), cert. denied, McGowan v. Dept. of Environmental Quality of Louisiana, 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989).
The Board's finding that Dr. Holladay failed to properly answer his renewal applications for the years 1991 and 1992, was not arbitrary, capricious, or characterized by abuse of discretion. The undisputed evidence in the record established that during the year 1990, the Texas Board commenced an investigation of Dr. Holladay as a result of a complaint filed with that board. On January 24, 1990, the Texas Board issued a subpoena to Dr. Holladay requesting that he produce his charts on thirteen (13) patients.
On February 6, 1990, an investigator with the Texas Board interviewed Dr. Holladay with respect to the investigation, advising Dr. Holladay that the investigation involved his practice of sending prescriptions for controlled substances to these patients through the mail, apparently in the absence of examination. On April 22, 1991, the Texas Board informed Dr. Holladay that the investigation was concluded with no apparent violation of Texas law. However, Dr. Holladay was simultaneously advised in writing that:
Under certain circumstances, you may be required to inform others that these allegations against you were lodged with this board. You may report that the allegation(s) was investigated and that it was determined that there was no apparent violation of the Medical Practice Act. You may also use a photocopy of this letter for that purpose.[1]
Nevertheless, on Dr. Holladay's renewal applications for his 1991 and 1992 Louisiana license, which he completed in November 1990 and 1991, Dr. Holladay was asked the following question: "During the preceding year, were you the subject of any type of disciplinary action or inquiry by any licensing authority, institution, society, etc.?," to which he responded "no." Dr. Holladay also certified to the truth of this answer.
Although Dr. Holladay attributes his withholding of such information as an oversight, undeniably the Board has the right to rely on the accuracy of the information supplied in determining whether to issue or renew a license. The Board is obligated to protect the citizens of this state against the unprofessional, improper, unauthorized and unqualified practice of medicine. In discharge of such duty, the Board has the authority to ascertain whether a physician's conduct has been the subject of investigation, inquiry or disciplinary action by the medical board of another state. Dr. Holladay's failure to disclose the Texas investigations resulted in the Board being misled by his response and deprived of the opportunity to investigate the underlying investigation. Relying on such untruthful information, the Board renewed Dr. Holladay's medical license for the two years in question.
Additionally, we reject Dr. Holladay's argument that because the Texas Board ultimately determined he did not violate the Texas Medical Practice Act, his failure to disclose the investigation to the Louisiana *723 Board should be disregarded. Dr. Holladay's contention, if accepted, would permit a physician being investigated by another state medical board to conceal such fact on his application pending another state's investigation in the hope that the investigation would conclude favorably, in which event the physician would not have to report it at all. This result would obstruct the Board's right and obligation to investigate a physician's conduct before granting the physician the privilege of practicing medicine in Louisiana.
Pursuant to La. R.S. 37:1285(A)(3), the Board may suspend or revoke a physician's license for "fraud, deceit, or perjury in obtaining any diploma, license, or permit." Id. In light of the evidence and the fact that the Board could lawfully revoke Dr. Holladay's license altogether, it can not be said that the Board acted arbitrary or capricious. Standing alone, without consideration of any of the other transgressions of the Medical Practice Act, it would appear that the Board was extraordinarily lenient in selecting the sanctions imposed. Accordingly, we affirm the district court's judgment upholding the Board's decision that Dr. Holladay violated La. R.S. 37:1285(A)(3).
2. ASSIGNMENT OF ERROR NO. 2: Did the trial court commit reversible error by reversing that portion of the Board's decision predicated upon La. R.S. 37:1285(A)(6) and (14)?
A review of the district court's reasons for judgment reveals that the reversal of that portion of the Board's decision based upon La. R.S. 37:1285(A)(6) and (14), was improper, unauthorized and in disregard of the evidentiary support in the record. The district court's reasons ignore the overwhelming evidence in the record and do not take into account the statutory requirements for judicial review of adjudications by the Board. La. R.S. 49:964(G). The district court did not rely upon statutory authority or the lack of substantial evidence contained in the record to support the Board's decision, which resulted in reversal. Rather, predicated upon the erroneous interpretation that the case of In Matter of DiLeo, 661 So.2d 162 (La.App. 4 Cir., 1995), writ refused, 666 So.2d 1085 (La.1996), was legally controlling, the court reversed the Board's decision. In the absence of a finding that the Board's decision was in violation of La. R.S. 49:964(G), the district court was without authority to reverse or to modify the Board's decision in any respect. In so doing, the district court committed reversible error.

A. The District Court Erroneously Relied on This Court's Decision in DiLeo.

Dr. Holladay contends that DiLeo stands for the proposition that the Board's failure to publish written standards setting forth how much and for how long a physician may prescribe narcotics for complaints of chronic pain precludes a finding of guilt pursuant to La. R.S. 37:1285(A)(6) and (14) as a matter of law.
Contrary to Dr. Holladay's assertions, our decision in DiLeo was the result of an evidentiary deficit resulting from an insufficiency of proof, not a legal one, and is specifically limited to the unique factual and evidentiary setting presented therein. Nothing in the DiLeo decision, either explicitly or implicitly, permits the extension of that case to a case where the evidence in the Board's record clearly established the appropriate standards of care for the management and treatment of patients complaining of non-malignant pain with chronic medication therapy and the physician's violation of such standards.
In DiLeo, the Board was presented with the medical records and prescriptions issued by Dr. DiLeo in connection with his treatment of eight patients. After considering the evidence, the Board rendered an adverse decision against Dr. DiLeo, finding that Dr. DiLeo had maintained such patients on various combinations of controlled substances for prolonged periods of time without legitimate medical justification.
On appeal, this Court reversed the Board's determination that Dr. DiLeo violated La. R.S. 37:1285(A)(6) and (14), finding that the Board's decision was not supported by sufficient evidence; that the Board's decision was only supported by the testimony of one physician who concluded that the duration of *724 the medicines prescribed was for too long a period of time. DiLeo, 661 So.2d. at 167. With respect to La. R.S. Sec. 37:1285(A)(6) and (14), this Court observed:
Although we agree with the reasoning set forth in Wilcox v. Louisiana State Board of Medical Examiners, that [La. R.S. Sec. 37:1285(A)(6) and (14)] is not unconstitutionally vague, we find that the court's decision in Wilcox contemplates that sufficient evidence of a violation of the statute will be presented prior to finding a physician to be guilty of such violation.... In order for enforcement of the statute to pass constitutional muster, the Board must prove by competent evidence the appropriate standard of care and how it has been violated in this particular incident. (Id. at 167, emphasis added).
In reversing the Board's decision in DiLeo, this Court noted: "The record fails to contain any evidence whatsoever as to what constitutes the appropriate standard for the prescribing of such medication" and that "the Board failed to introduce sufficient evidence as to what constitutes `prevailing and usually accepted standards of medical practice.'" Id. (emphasis added).
The exclusive grounds upon which an administrative determination or decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G), La. Const., 1974, Art. 5, 510(B). Were we to disregard the overwhelming evidence contained in this record and consider DiLeo as controlling authority in this case, the result would be to judicially divest the Board of its legislatively prescribed right to exercise its duty to protect the public health, welfare and safety against the unprofessional, improper, unauthorized and unqualified practice of medicine in this state. Moreover, commonly observed principles of judicial interpretation do not allow extension of the DiLeo decision to extend or alter statutorily imposed limitations of appellate review.
Further, DiLeo is factually distinguishable from this case. A review of the record in this case establishes that the Board had more than sufficient evidence to support its determination that Dr. Holladay violated the Medical Practice Act, La. R.S. 37:1285(A)(6) and (14). Specifically, unlike the evidence in DiLeo, the record unequivocally established:
Dr. Holladay falsified information on two Louisiana license renewal applications with respect to an investigation by another state's medical board of his controlled substance prescription practices;
Dr. Holladay continuously prescribed controlled drugs to several of the patients at issue in the absence of any treatment plan and in several instances, for periods of up to eight months, without performing any medical examination whatsoever to determine if the medications continued to be indicated or were even necessarya point on which even Dr. Holladay's own experts found no conformity with a prescribing physician's standard of care;
Dr. Holladay failed to create or maintain sufficient medical records to document that he had inquired into the patients' history of substance and/or alcohol abuse, both of which are contraindicated to the prescription of controlled substances. In fact, Dr. Holladay prescribed controlled substances to several patients in the presence of a history of drug and/or alcohol abuse;
With respect to improper use of medication, Dr. Holladay's prescriptions resulted in two (2) of his patients requiring drug detoxification, one of them twice, and that one of these patients died as a result of an overdose of illegal drugs while under Dr. Holladay's care and medication therapy;
Dr. Holladay was alerted by a pharmacist that one of his patients was simultaneously receiving prescriptions for Lorcet, a narcotic medication, from both Dr. Holladay and another physician, yet Dr. Holladay continued to prescribe medication to her. Nothing in Dr. Holladay's charts indicate that he had either spoken with the other physician about the patient or that he had inquired or cautioned the patient about such conduct;
Dr. Holladay allowed his patients to control the supply of the medications they received by allowing refills of the drugs before such would have been needed if taken in the manner allegedly prescribed;

*725 Dr. Holladay's experts agreed that none of his patients obtained complete relief; indeed, they were unable to opine with any degree of medical certainty that any had obtained even partial relief from the medications prescribed;
Many of Dr. Holladay's patients experienced falls and automobile accidents while receiving controlled substances from Dr. Holladay without any documentation of any inquiry or attempt by him to determine whether such were the result of impairment.
Moreover, and most significantly, the unrebutted testimony of the Board's expert witness established the prevailing standards of care for prescribing controlled substances for the treatment of chronic non-malignant pain, and that Dr. Holladay violated these standards.
Specifically, the Board's expert witness, Dr. Delmar Walker, M.D. ("Dr. Walker"),[2] testified as to the standards of care applicable to prescribing controlled substances for the treatment of chronic non-malignant pain. In treating chronic non-malignant pain with controlled substances, Dr. Walker testified that a physician must:
Create a treatment plan which attempts all other modalities of less dangerous treatment before embarking on continuous, long term controlled substance therapy;
Before beginning controlled substances, ensure through documented trial that non-addictive medications are not appropriate or do not work;
Obtain a history of substance abuse and/or alcohol abuse from the patient;
Carefully monitor the medication prescribed to ensure that the patient is taking the medication in accord with instructions;
Attempt drug-free periods to assess the efficacy of the medications;
Assure that he, rather than the patient, is in control of the amount of medication prescribed to the patient; and
Have frequent visits with the patient to re-evaluate the advisability of prescribing controlled substances and assess whether there are indications of abuse, such as the patient obtaining medication from other physicians, taking escalating dosages of drugs and failure to obtain relief from those controlled substances which are prescribed.
Dr. Walker testified that physicians do not require a "rule or regulation" to inform them that it is a necessity to determine if the patient has a history of substance abuse, which is a contraindication to prescribing controlled substances and something the physician should be very cautious of; or that he should establish a treatment plan and first attempt all other modalities of treatment before employing controlled substances; or that he should carefully monitor the controlled substances he is prescribing to confirm the patient is complying with the instructions for taking them. Attempting drug-free periods, assessing whether the medications prescribed are effective, determining if there are indications that call for re-evaluation of the advisability of prescribing controlled substances, such as the patient's seeing other physicians, taking escalating dosages of drugs and the failing to obtain relief from the controlled substances which are prescribed, are elements which physicians learn in medical school and represent "just common sense and good medicine." (emphasis supplied).
With regard to Dr. Holladay's treatment of the nine patients at issue, Dr. Walker testified that Dr. Holladay failed to satisfy the minimal standards of the medical profession in Louisiana. Dr. Walker criticized Dr. Holladay's long term prescription of narcotic drugs, Dr. Holladay's failure to attempt other modalities of treatment, Dr. Holladay's failure to monitor his patients closely enough, Dr. Holladay's excessive disbursement of controlled substances, and Dr. Holladay's failure to modify or decrease the amounts of drugs prescribed, despite warnings of drug abuse.
Dr. Holladay did not submit any contravening expert testimony disputing the standards of care set forth by Dr. Walker. Additionally, *726 Dr. Holladay does not dispute that each of the controlled substances at issue have the ability to produce drug tolerance, addiction and dependency, or that Dr. Holladay prescribed continuous combinations of controlled substances to each of the nine patients at issue for periods ranging from 2½ to over 4 years.
Rather, Dr. Holladay, conceding that he adheres to a very liberal philosophy in prescribing controlled substances, contends that a conflict exists between two divergent schools of thought, one more liberal than the other, as to the appropriate manner of prescribing controlled substances in the treatment of chronic non-malignant pain. Dr. Holladay argues that because of this conflict and in the absence of any governing, written standards, the Board cannot find Dr. Holladay in violation of La. R.S. 37:1285(A)(6) and (14).
Dr. Holladay's argument misses the point. It is not Dr. Holladay's liberal prescribing philosophy which resulted in the Board's decision. Rather, it was Dr. Holladay's failure to adhere to basic precepts of medical practice or to follow the appropriate medical standards that were his violations. Certain basic standards are recognized by both schools of thought. Given the unique physical makeup of each patient (i.e., age, weight, presence of other medical conditions or contraindications, drug combinations, pregnancy, tolerance to medication, history of substance and/or alcohol abuse, etc.), as well as each patient's unique medical problems, each patient should have an individualized treatment plan that adheres to generally accepted guidelines. It would not be feasible for the Board to adopt a written standard that enumerates with mathematical certainty (but without factoring into the equation each patient's unique concerns) the precise number of dosage units of every type of narcotic analgesic which a physician may legitimately employ in the treatment of chronic non-malignant pain.

B. The District Court's Reasons for Reversing the Board's Decision Directly Controvert the Evidence Contained in the Record.

Additionally, the reasons expressed by the district court in support of reversing the Board's decision are directly controverted by substantial evidence contained in the record. The only reference in the district court's reasons for judgment to the evidence is that contained in the Board's decision.
In reviewing and reversing the Board's decision, the district court noted that the decision did not find that Dr. Holladay failed to examine patients before prescribing narcotics, or that the prescriptions were being diverted or improperly used by the patients. We disagree with this analysis and interpretation, because the district court could not have taken into consideration the evidence contained in the admittedly lengthy record of the Board's proceeding on the very points referred to in the decision.
The evidence in support of the Board's decision unequivocally establishes that Dr. Holladay failed to examine patients before prescribing narcotics, for periods of up to eight months. Similarly, the evidence established that the prescriptions were being diverted or improperly used by the patients. For example, one of Dr. Holladay's patient's received simultaneous controlled substances from another physician, yet Dr. Holladay continued to prescribe medications to her. Two other patients required drug detoxification, and one patient died from an overdose of illegal drugs under Dr. Holladay's care. Dr. Holladay acknowledged that he allowed his patients to control the supply of the medications they received by allowing refills of the drugs before such would have been needed if taken in the manner allegedly prescribed. Because the evidence in the record supports the Board's findings, the district court erred in reversing the Board's decision.

C. The Board Did Not Act in an Arbitrary or Capricious Manner in Administering the Evidentiary Hearing or in Determining that Dr. Holladay Violated the Medical Practice Act.

The record supports the careful deliberation given by the Board to the facts presented during the course of the Board's administrative hearing. There has been no demonstration whatsoever that the Board abused its discretion, acted arbitrary or *727 capriciously or that its decision is manifestly erroneous or predicated on anything other than the clear and compelling evidence in the record.
The proceedings before the Board were conducted over the course of three (3) full days of hearing. Thousands of documents were introduced and considered. Additionally, the Board carefully considered Dr. Holladay's testimony, as well as testimony, on behalf of Dr. Holladay, from: Dr. Frank Glenn Scholte, Jr., M.D., Dr. Donna M. Holder, M.D., and Gwen Bagley, a member of Dr. Holladay's office staff. By deposition the testimony of Dr. James Zum Brunnen, M.D., was introduced, and by stipulation, the testimony of Debbie Miciotto, a member of Dr. Holladay's office staff, was considered. The Board had the opportunity to view, question and consider the testimony given by the each expert witness and to weigh each witnesses' credibility and persuasions.
After considering all of the documentary evidence and the witnesses', the Board concluded that Dr. Holladay's charts, even when considered in the light of his testimony relative thereto, did not support the drug treatment regimens which he prescribed. In its written decision, the Board acknowledged that it does not and never has condemned the practice of prescribing controlled substances for the relief of non-malignant pain. However, when unaccompanied by appropriate testing, diagnosis, oversight and monitoring, as occurred in Dr. Holladay's case, the physician falls below generally accepted standards of care, constituting the practice of bad medicine.

3. The Penalties Imposed by the Board Were Not Unreasonable, Arbitrary or Capricious

Last, Dr. Holladay contends that the penalties imposed by the Board were grossly disproportionate to the alleged offense. An administrative agency's decision assessing a penalty should not be set aside unless it is arbitrary, capricious or characterized as an abuse of discretion. La. R.S. 49:964(G)(5); In the Matter of John W. McGowan, 533 So.2d 999 (La.App. 1 Cir.1988), writ denied, 537 So.2d 1168 (La.1989), cert. denied, McGowan v. Dept. of Environmental Quality of Louisiana, 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989). Considerable latitude must be allowed to public agencies to perform functions delegated to them under law and courts should not intervene unless such conduct is clearly unreasonable and arbitrary. Mayeaux's Food and Sporting Goods, Inc. v. State of Louisiana, Department of Health and Human Resources, 470 So.2d 469 (La.App. 1st Cir.1985). The imposition of an administrative sanction is in the nature of a disciplinary measure.
In deciding what, if any, discipline to impose, the Board may be strict, moderate or lenient. Unless arbitrary, such discretionary decisions must be upheld. Id., at 472-473. In light of the evidence and the fact that the Board could lawfully revoke Dr. Holladay's license altogether, it appears that the Board was extraordinarily lenient in selecting the sanctions imposed. Accordingly, there is no indication that the penalty imposed by the Board was arbitrary, capricious, an abuse of discretion, or grossly disproportionate to the offense.

CONCLUSION
The record overwhelmingly indicates the careful deliberation given by the Board to the facts presented during the course of the administrative hearing, and that the Board's decision was not arbitrary, capricious, characterized by abuse of discretion or clearly unwarranted exercise of discretion. The Board's determination that Dr. Holladay violated the Medical Practice Act was not manifestly erroneous in view of the reliable, probative, and substantial evidence in the record.
The record contains more than sufficient evidence to sustain the Board's determination that Dr. Holladay was guilty of violating the Medical Practice Act. The trial court's judgment is affirmed in part and reversed in part. The decision and sanctions imposed by the Board as a result of the Board's determinations that Dr. Holladay violated La. R.S. 37:1285(A)(3) is hereby reinstated in its entirety. We reverse the trial court's decision holding that there was no violation of La. R.S. 37:1285(A)(6) and (14). We reinstate *728 and make executory the entirety of the sanctions imposed by the Board's original determination.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Adm. Rec., Complainant Ex. 1(6), Vol. 4.
[2] Dr. Walker is a Board Certified orthopaedic surgeon whose office is in Houma, La. Dr. Walker has practiced orthopedic surgery in Louisiana since 1976.