560 So.2d 1009 (1990)
Rosario Michael MONTALBANO, Jr., M.D.
v.
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS.
No. 89-CA-1520.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
*1010 Richard M. Donahue, Gail Snakenberg, Covington, for plaintiff/appellant.
Philip O. Bergeron, L. Thomas Styron, New Orleans, for defendant/appellee.
Before GARRISON, BARRY and BECKER, JJ.
BECKER, Judge.
Plaintiff/appellant, Dr. Rosario Montalbano, Jr., appeals the trial court's affirmation of the decision of the Louisiana State Board of Medical Examiners to suspend his license to practice medicine on the basis of a violation of L.S.A.-R.S. 37:1285 A(18).[1]
Dr. Montalbano was charged with knowingly performing acts which assisted an unlicensed person, Daniel Zehr, D.V.M., to practice medicine and that, in his relationship with Zehr he had a professional connection with and lent his own professional name and licensure status to an illegal practitioner. Montalbano allowed Zehr to treat several patients with "auricular therapy,[2] allegedly a non-intrusive type of acupuncture.
After an administrative hearing, the Louisiana State Board of Medical Examiners suspended Dr. Montalbano's license for one year. However, this suspension was suspended following the conclusion of two months from the effective date of the suspension. Montalbano was also ordered to obtain fifty credit hours in continuing medical education programs accredited by the American Medical Association, and to appear before the Board at the conclusion of a one year probationary period to submit written certification of the CME credits completed.
Dr. Montalbano then sought review of the Board's decision. The trial court, after reviewing the hearing transcript and exhibits, and memorandum of both parties, affirmed the decision of the Board. In his written reasons for judgment, the trial judge stated that he agreed with
"the Board's construction of L.S.A.-R.S. 37:1285(18), in which they find that an affirmative duty is placed on the physician to ascertain the credentials of persons whom they aid in the practice of medicine. Dr. Montalbano could easily have verified Dr. Zehr's credentials...."
Montalbano now seeks appellate review of the trial court's decision, arguing that
(1) the Board erred in denying his motion for a directed verdict;
(2) the trial court erred in failing to rule on the defense of fraud, as applied to the word "knowingly" as worded in L.S.A.-R.S. 37:1285 A(18); and
(3) that L.S.A.-R.S. 37:1285 A(18) is unconstitutionally vague and ambiguous.
A litigant who fails to plead the unconstitutionality of a statute cannot legally raise the constitutional issue in the appellate court. Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971); Burrell v. Schlesinger, 459 So.2d 1195 (La.App. 4th Cir.1984), writ denied, 463 So.2d 1320 (La. 1985). Therefore, as appellant has failed to plead or raise the issue before the Board *1011 and/or the trial court, we will not consider appellant's constitutional claim. See Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983), writ denied, 445 So.2d 441 (La.1984).
The scope of appellate review of action taken by an administrative agency is limited to a determination of whether the decision was unreasonable, arbitrary or capricious or amounted to an abuse of discretion. Delta Bank and Trust Co. v. Lassiter, 383 So.2d 330 (La. 1980); Hughes v. Louisiana State Board of Dentistry, 490 So.2d 1097 (La.App. 4th Cir.1986), writ denied, 496 So.2d 326 (La.1986), cert. denied, 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed.2d 764 (1987). The appellate court may reverse the decision of the agency if the substantial rights of the appellant have been prejudiced. Hughes, supra.
Further, in reviewing such actions, courts must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession. Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La. App. 4th Cir.1984), writ denied, 450 So.2d 359 (La.1984); Fisher v. Louisiana State Board of Medical Examiners, 352 So.2d 729 (La.App. 4th Cir.1977), writ denied, 353 So.2d 1338 (La.1978).
Dr. Montalbano contends that both the Board and trial court erred in denying his motion for a directed verdict. The adjudicative body of the Louisiana State Board of Medical Examiners is governed by the Administrative Procedure Act, L.S.A.-R.S. 49:950 et seq. Under this Act, there is no such procedural vehicle as a motion for a directed verdict. Further, the Louisiana Code of Civil Procedure does not provide for "directed verdicts" in judge trials. The correct procedural vehicle would be a motion for involuntary dismissal. L.S. A.-C.C.P. Article 1672(B) allows a party to move for a dismissal of the action after the plaintiff has presented his case. The trial court must evaluate all the evidence presented and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2nd Cir.1988); Caldwell v. Texas Industries, Inc., 419 So.2d 86 (La.App. 2nd Cir.1982), writ denied, 423 So.2d 1149 (La.1982); Gleason v. City of Shreveport, 393 So.2d 827 (La.App. 2nd Cir.1981), writ denied 397 So.2d 806 (La. 1981); Sevin v. Shape Spa for Health & Beauty, 384 So.2d 1011 (La. App. 4th Cir.1980).
Although a plaintiff is entitled to no special inferences in his favor, uncontroverted testimony should be taken as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection. Johnson v. Insurance Company of North America, 454 So.2d 1113 (La.1984); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979).
We find that the trial court and the Board did not commit error in denying Dr. Montalbano's motion for directed verdict, or more correctly, motion for an involuntary dismissal. There are no such procedural vehicles provided for in the Administrative Procedure Act. Thus, the Board was correct not to acknowledge such a motion.
The trial court did not directly address appellant's motion. The court simply affirmed the decision of the Board. Therefore, we must assume that the trial court affirmed the Board's denial of appellant's motion. Reviewing the record, we find there was sufficient evidence presented by the complainant to show that Dr. Montalbano knowingly assisted and aided Daniel Zehr in the practice of medicine.
The complainant's case turned upon the testimony of the two private investigators hired to act as patients seeking treatment from Zehr. Both investigators testified that prior to being treated by Zehr, they were each examined by Dr. Montalbano. Ms. Deborah Baker testified that, after a brief exam by Montalbano, she was informed *1012 that Zehr would be her physician. She stated that no one told her that Zehr was not a licensed physician.
Mr. Frank Fox, the other investigator, testified that Zehr told him that he would have to be examined by Dr. Montalbano before Zehr could treat him. Zehr also told Mr. Fox that the treatment had to be rendered under the supervision of a physician. Both Fox and Baker testified that Montalbano did not remain in the room while Zehr performed "auricular therapy" on them.
Both also testified that the fee for the treatment was $100.00 which was paid to Montalbano's receptionist. Upon payment, each received a receipt bearing Montalbano's name and tax identification number. Further, the services were identified on the receipts as "TENS," not "auricular therapy," or "auricular acupuncture."
The testimony clearly shows that Dr. Montalbano assisted Zehr in the practice of medicine and lent his name and licensure status to Zehr. In light of this evidence, we cannot say that the trial court erred in rejecting appellant's motion.
Dr. Montalbano's final argument is that the trial court erred in failing to rule on the defense of fraud. He argues that the Board incorrectly interpreted the word "knowingly" as used in L.S.A.-R.S. 37:1285 A(18). The appellant bases his argument upon the theory that he was duped by Zehr. Dr. Montalbano contends that Zehr told him that he, Zehr, had received oral permission to perform "auricular therapy" from Dr. Lyons, Secretary of the Board. However, Dr. Lyons testified that he did not give Zehr or any veterinarian permission to practice acupuncture or "auricular therapy."
We find that appellant's use of the defense of fraud is inapplicable here. The statutes authorizing the use of acupuncture as the practice of medicine clearly prescribes the certification required by one who intends to practice acupuncture. L.S. A.-R.S. 37:1356 et seq. provides that only an acupuncturist[3] or an acupuncturist's assistant[4] may perform acupuncture. Zehr was neither an acupuncturist nor an acupuncturist's assistant; he was a veterinarian. Montalbano was aware of these facts. While Montalbano may not have been fully aware of the statutory requirements for the practice of acupuncture, ignorance of the law is not a defense. We agree with the trial court that L.S.A.-R.S. 37:1285 A(18) places an affirmative duty on a physician "to ascertain the credentials of persons whom they aid in the practice of medicine."
Further, Dr. Montalbano admitted that he allowed Zehr to practice "auricular therapy" in his office on several of his patients. There was evidence that when patients paid for the treatment rendered by Zehr, they received receipts bearing Montalbano's name and tax identification number.
In light of such evidence, we conclude that the Board did not act arbitrarily or capriciously in finding that Dr. Montalbano knowingly assisted and aided Daniel Zehr in the practice of medicine, and that Montalbano did lend to Zehr his name and licensure status.
Dr. Montalbano further argues that he was selectively prosecuted by the *1013 Board. He alleges that there were other physicians who allowed Zehr to perform "auricular therapy" on their patients yet were not charged with violating L.S.A.-R.S. 37:1285 A(18). While the record indicates that the Board did not institute disciplinary proceedings against these physicians, there is no evidence in the record to suggest that the physicians had relationships with Zehr similar to the arrangement which existed between Montalbano and Zehr. Therefore, there is no merit to appellant's argument that he was selectively prosecuted.
Accordingly, the judgment of the trial court affirming the decision of the Louisiana State Board of Medical Examiners is affirmed.
AFFIRMED.
NOTES
[1] L.S.A.-R.S. 37:1285 A(18) provides in pertinent part:

"The board may refuse to issue, or may suspend or revoke any license or permit, or impose probationary or other restrictions of any license or permit issued under this Part for the following causes:
* * * * * *
18) Knowingly performing any act which, in any way assists an unlicensed person to practice medicine, or having professional connection with or lending one's name to an illegal practitioner."
[2] Auricular therapy is allegedly a form of acupuncture whereby acupuncture needles or, alternatively, magnetic beads are applied to a pressure point on the ears. Zehr, in his treatment of patients, would apply the beads to the patient's ears with tape, then have the patient recline on the examining table whereupon he would place one small battery in the patient's left hand and two in the right hand, along with a wire cable with attached alligator clips. Zehr would then place "filters" allegedly containing human tissue along the patient's forehead and arms. Finally, Zehr produced a small oscillating fan with what he alleged to be magnets on each blade, turning the fan on and directing it in turn towards the patient.
[3] L.S.A.-R.S. 37:1357 provides that "the Board shall certify as an acupuncturist of traditional Chinese acupuncture a physician licensed to practice medicine in Louisiana who has successfully completed six months training in traditional Chinese acupuncture in a school or clinic approved by the board." (emphasis added).
[4] L.S.A.-R.S. 37:1358 likewise provides for the certification of acupuncturists' assistants:

"The board shall certify as an acupuncturist's assistant an individual to practice in Louisiana who has successfully completed thirty-six months training in a school or clinic of traditional Chinese acupunture approved by the board, or an individual who has been appointed or employed at a licensed or accredited Louisiana hospital, medical school or clinic to perform acupuncture for research purposes. The acupuncturist's assistant must be employed by and work under the physical direction, control, and supervision of a physician or an acupuncturist certified by the board to practice acupuncture and must perform such duties, services and functions assigned by said employer at a place of employer's practice unless said duties, services, and functions are performed in the physical presence of said employer or licensed physician or certified acupuncturist."