JIJONES, Judge.
Dr. Herman E. Walker, Jr. (Dr. Walker) appeals the trial court’s judgment affirming the decision by the Louisiana State Board of Medical Examiners (the board) to suspend his medical license for a term of five years; or, in the alternative, Dr. Walker could be reinstated after six months, but he would remain on probation for the duration of the five year period and pay a fine of $5,000.00 to the Board, as well as other penalties not *351 pertinent to this appeal. We affirm the trial court’s judgment.
By Administrative Complaint filed January 19, 1989, Dr. Walker was charged with violations of the Louisiana Medical Malpractice Act. An administrative hearing was held before a panel of the Board in which attorneys from the law firm of Adams and Reese served as prosecutors and Dr. Walker was represented by counsel. In its decision written pursuant to the hearing the Board found:
... The evidence presented in this case relates to Dr. Walker’s treatment and prescription of controlled substances to some 53 patients, 52 of whom the physician ^purportedly treated for obesity, or weight control. In every one of such 52 cases, as appetite suppressants, Respondent prescribed one or more amphetamine or sym-pathomimetic amine controlled substances, including Biphetamine (amphetamine), Didrex (benzphetamine hydrochloride), Fas-tin (phentermine hydrochloride), Ionamin (phentermine resin), Melfiat (phendimetra-zine tartrate), and Tenuate Dospan (die-thylpropion hydrochloride).
The Board went on to find that when used as appetite suppressants these drugs are known as “anorectics”. In the management of obesity, drugs of this class are indicated and approved for short-term use only adjunc-tive with a weight reduction regimen based on caloric restriction. The Board also found that these drugs are “explicitly contraindicated for use in patients with advanced arteriosclerosis, symptomatic cardiovascular disease, moderate to severe hypertension, hyperthyroidism, known hypersensitivity or idiosyncrasy to such substances, and glaucoma, as well as for patients with a known history of drug abuse”.
Furthermore, the Board found the clinical efficacy of these drugs has been seriously questioned. “[I]t has long been the consensus of medical authority that such drugs should be used with extreme caution, weighing their limited usefulness against the substantial risks inherent in their use, and administered only to obesity patients who have proven refractory to other forms of therapy, and then at the lowest effect dosage for relatively short period”. Consistent with this thinking and many former cases treating promiscuous prescription of anorectics the Board promulgated a formal statement concerning the prescription of anorectics which was distributed to all physicians licensed to practice medicine in Louisiana.
Reviewing prescriptions filled by pharmacies between September 1987 and September 1988 and Dr. Walker-’s own records, the Board found that in a number of instances Dr. Walker initiated or continued the prescription of | ;¡anorectics “in the absence of documented consistent weight loss and, indeed in the face of erratic weight changes and even gains in weight”. The Board found that Dr. Walker prescribed anorectics “in the face of conditions in the presence of which anorectics are explicitly contraindicated and dangerous”. The Board went on to find that he “prescribed other controlled substances for extended periods without articulable medical justification and against authoritative medical advice to the contrary. And (sic) he has undertaken and maintained such drug therapies largely without recordation of patient medical histories and physical examination.” The Board concluded:
- Dr. Walker, substituting prolonged medication regiments and polypharmacolo-gy for sound medical treatment, repeatedly and consistently prescribed legally controlled, dependency-inducing substances without legitimate medical justification therefor. We further find that such practices clearly and convincingly demonstrate medical incompetency on the physician’s part and continuing and recurring medical practice which fails to satisfy the prevailing and usually accepted standards of medical practice in this state.
Dr. Walker appealed the Board’s decision to the trial court. The trial court ordered an evidentiary/contradictory hearing limited to the issue of whether the statutory and due process rights of Dr. Walker were violated. Pursuant to that hearing the trial court issued its judgment finding that:
... Dr. Walker was afforded a fair and impartial hearing before a panel of Board members who heard the evidence, including that presented by Dr. Walker, and reached detailed findings of fact and eon- *352 elusions of law, ultimately organized into a final document with the assistance of an independent attorney, who had no involvement whatsoever in the investigation or prosecution of the case.
Dr. Walker appeals the trial court’s judgment.
As part of its findings, the Board concluded that there .was no credible medical evidence indicating that anorectics could be useful or effective in the treatment of obesity beyond a period of twelve weeks administration. By his Ufirst assignment of error, Dr. Walker argues that the “twelve week rule” was not properly promulgated in the Louisiana Register in that it was publicized only on one occasion in the Louisiana State Medical Journal.
The Board argues that a suggestion that Dr. Walker did not know of the limitations on the proper and lawful use of a controlled substance is tantamount to a confession of medical incompetence. The Board introduced a formal statement concerning the prescription of anorectics which was distributed to all physicians licensed to practice medicine in Louisiana. Furthermore, the Board’s decision was not predicated on Dr. Walker’s having violated the Statement on Anorectics. In fact, specific rules advising physicians of the dangers of excessive use of drugs is not a prerequisite to the Board’s finding of incompetency.
Specifically, Dr. Walker was found to have prescribed amphetamines and related stimulants to patients not for twelve weeks, but in excess of two (2) years. Dr. Walker did not cite any authoritative source which indicated that amphetamines and anorectics could be used for periods greater than twelve weeks. He relied on an article by Dr. Friedman in Post-graduate Medicine (May 1988) which suggests that long-time use of appetite suppressants are less dangerous than antihyper-tensives or other medications commonly prescribed to the obese. Furthermore the long-term use of these drugs was but one finding of incompetency by the Board. Dr. Walker defended his prescription of these drugs when their use was contraindicated by reasoning that there are eases in which a patient with heart disease could use amphetamines if being overweight is a greater risk. The Board was adamant in its view that this was a breach of professional standards. The record contains comments which also support the Board’s findings of incompetency including a paucity of physical | .^examinations on the patient’s charts. We find that the Board’s decision is supported by the record.
By his second assignment of error, Dr. Walker argues that the Board’s discipline of him is arbitrary in that there is no evidence that any of his patients were harmed by his prescription of medication.
The Board submits that a rule of law which required death or injury of a physician’s patients before the physician could be lawfully disciplined would be a harsh rule indeed. The Board’s purpose is to stop unlawful and inappropriate medical practices before patients are harmed.
We agree that evidence of harm is not necessary where the substances are controlled. This assignment of error lacks merit.
By his third assignment of error, Dr. Walker argues that the clinical efficacy of anorectics was not in evidence in this case, yet the Board disciplined him based on its “twelve week rule”. Dr. Walker argues that such discipline was unfair because this evidence was outside of the record and was not subject to cross-examination.
The Board cited sources for its evidence regarding the clinical efficacy of anorectics. These critical references are to Physicians’ Desk Reference (42 Ed.1988), as well as Drug Facts and Comparisons (1989). Furthermore, the Board cited precedents in the form of many of its prior decisions involving promiscuous prescription of anorectics. The Board submits that courts “must be cognizant of the strong presumption of validity and propriety in ... administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession.” Montalbano v. Louisiana State Board of Medical Examiners, 560 So.2d 1009 (La.App. 4th Cir.1990), citing Wil *353 cox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La.App. 4th Cir. 1984), writ denied, 450 So.2d 359 (La.1984); Fisher v. Louisiana State Board of Medical Examiners, 352 So.2d 729 (La.App. 4th Cir. 1977) writ denied 353 So.2d 1338 (La.1978).
Dr. Walker did not object to the Board’s taking administrative notice of the authoritative works. Moreover, Dr. Walker acknowledged that his prescription of anorectics to patients was grossly excessive in light of the rule. He testified, “... as I mentioned earlier, of course, I did not intend to break any rules. I mean this would be like driving two hundred miles an hour through a school zone. If I knew there was a rule out....” The Board’s discipline of Dr. Walker appears warranted under these facts.
By his fourth assignment of error, Dr. Walker relies on Allen v. Louisiana State Board of Dentistry, 543 So.2d 908 (1989) in arguing that his statutory and due process rights were violated by the Board’s process. In Allen, counsel for the Louisiana State Board of Dentistry prosecuted Dr. Allen before a disciplinary committee. After finding Dr. Allen guilty, the committee requested that the Board’s counsel also prepare the findings of fact and conclusions. The Supreme Court found that the final decision was not the product of a neutral hearing committee but the product of an advocate. The Court commented that the final decision played a critical role in the process of meaningful judicial review and therefore the committee should have sought legal assistance from independent counsel, not the prosecutor.
Dr. Walker argues that in the instant ease where the Board accepted assistance in preparing the final draft of its decision from an attorney who is a member of the same law firm as Dr. Walker’s prosecutor, by logical extension of the Allen decision, his due process rights were violated.
The Board submits that this is not an Allen issue. The Board used an attorney with no involvement with the case to help draft its opinion. The legal ^assistance rendered to Dr. Muslow in the preparation of the final decision was merely the reducing of the Board’s final decision to writing. Attorney Robert J. Conrad, Jr. acted “in the role of scribe or judicial clerk, working from my own [Dr. Muslow’s] extensive notes and draft findings of fact and conclusions of law, prepared following deliberations of the panel members”.
This testimony was elicited from Dr. Mus-low at an evidentiary/eontradictory hearing ordered by the trial court. Apparently, the trial court also was concerned that an obviously independent person was not used in reducing the Board’s decision to writing. The trial court had an opportunity to hear Dr. Walker’s arguments and concluded that his due process rights were not violated. Although we question the Board’s choice in using attorneys of the same firm in the roles of prosecutor and as counsel in finalizing the Board’s written decision, because of the appearance of impropriety, we do not find that this amounts to a deprivation of statutory and due process rights. We find no manifest error with the trial court’s ruling.
Dr. Walker also challenges the Board’s policy whereby each of the seven members of the Board alternatively serve as investigating officer or complaining party. It is not clear to us how this policy violated Dr. Walker’s rights. In each instance where a Board member serves as an investigating officer or complaining party, he is automatically recused from any and all discussions and proceedings involving the physician under investigation. We find no deprivation of statutory or due process rights in the disciplinary hearing of this matter.
For the foregoing reasons, the trial court’s judgment is affirmed.

AFFIRMED