995 So.2d 664 (2008)
Kimberly LAWHEAD
v.
LOUISIANA STATE BOARD OF PRACTICAL NURSE EXAMINERS.
No. 2007-CA-1593.
Court of Appeal of Louisiana, Fourth Circuit.
October 28, 2008.
Rehearing Denied December 3, 2008.
*665 Ann M. Halphen, M. Aminthe Broussard, Taylor Porter Brooks & Phillips LLP, Baton Rouge, LA, for Plaintiff/Appellant.
Francis B. Mulhall, Metairie, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III).
PATRICIA RIVET MURRAY, Judge.
This is an appeal from a judgment of the trial court affirming a decision of the Louisiana State Board of Practical Nurse Examiners (the "Board") that imposed disciplinary action on Kimberly Lawhead, a licensed practical nurse ("LPN"), for violating La. R.S. 37:969 A(4)(f), engaging in unprofessional conduct.[1] For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On July 18, 2006, Lydia Vancena, who was then sixteen months old, was admitted to Christus Schumpert-St. Mary's Place Hospital ("St. Mary's") in Shreveport, Louisiana, for numerous surgical procedures, including a bilateral eye surgery, esophagogastroduoden oscopy, colonoscopy, and PH probe placement.[2] Lydia's doctor who performed some of the surgeries was Dr. Sunny Hussain. Following the surgeries and a brief stay in the pediatric acute care center ("PICU"), Lydia was returned to her hospital room at about 10:30 a.m. Lydia's mother, Kim Vancena, noticed that she was grunting and flailing her arms. Leah Ann Bell, Dr. Hussain's registered nurse practitioner ("RNP"),[3] checked Lydia's breath sounds. Ms. Bell attributed Lydia's grunting to air in the belly, which is symptomatic to the surgery. Ms. Bell told Mrs. Vancena that this would go away when the infant passed gas. Mrs. Vancena claims that she requested that Ms. Bell call Dr. Hussain and that Ms. Bell replied that there was no need to do so. Ms. Bell, on the other hand, stated that *666 she was not aware that Lydia's family requested to speak to Dr. Hussain at any time before she left the hospital that day at 5:00 p.m. Ms. Bell stated that "[i]f the mother would have asked me to call Dr. Hussain, I would have gotten Dr. Hussain."
Amanda Hall, a RN, cared for Lydia from 10:00 a.m., when Lydia was brought to her room, until 3:30 p.m., when Ms. Lawhead came on duty. Ms. Hall described Lydia initially as "a little fussy," but indicated that she had settled down by the end of her shift. Based on orders she was given from Ms. Bell, Ms. Hall administered Tylenol to Lydia at 12:30 p.m. During Ms. Hall's shift, Ms. Bell again checked on Lydia at 1:30 p.m. for posterior breath sounds and reported that the breath sounds were clear. Ms. Hall did not recall Mrs. Vancena requesting that she call Dr. Hussain. According to Ms. Hall, the protocol at St. Mary's regarding contacting the doctor was that if a patient specifically requests the doctor, then the nurse would call him. Generally, however, the nurse calls the nurse practitioner, the nurse practitioner calls the doctor, and the nurse practitioner then gives the nurse orders. However, if the nurse needs to do so, the nurse can call the doctor.
At 3:30 p.m. Ms. Lawhead, who was then a LPN,[4] assumed the care of Lydia. Mrs. Vancena alerted Ms. Lawhead that Lydia's symptoms had remained constant and that she had not fully awakened from the anesthesia. Mrs. Vancena contends that she requested that Ms. Lawhead contact Dr. Hussain and that when Ms. Lawhead left the room she thought that she had gone to contact the doctor. Instead, at about 4:00 p.m., Ms. Lawhead contacted Ms. Bell and informed her that Lydia's parents wanted to consider Mylicon drops or stronger pain medication. After communicating with Ms. Bell, Ms. Lawhead returned to the room with an order to administer Mylicon drops through Lydia's feeding tube to relieve her gas pains. After giving the Mylicon drops some time to work, Mrs. Vancena claims that she again requested that Dr. Hussain be notified because she felt that post surgery gas was the wrong diagnosis. At about 6:00 p.m. Ms. Lawhead again contacted Ms. Bell and informed her that the Mylicon drops had not relieved Lydia's pain and that her parents were requesting stronger medication. Ms. Bell, after previously discussing the matter with Dr. Hussain, ordered Ms. Lawhead to administer pain medication, Lortab elixir, through Lydia's feeding tube. According to the medical records, Ms. Lawhead administered the Lortab to Lydia at 7:00 p.m.[5] This was the last time she saw Lydia that day.
At about 7:30 p.m., Amanda Chico, an R.N., assumed care of Lydia. Ms. Chico indicated that when she took over caring for Lydia from Ms. Lawhead, Lydia appeared to be resting and was not in respiratory distress. Ms. Chico indicated that Mrs. Vancena never asked her to call Dr. Hussain.
During Ms. Chico's shift, Rosaline Darty,[6] a RNP, came to Lydia's room for a *667 social visit. Ms. Darty had previously cared for Lydia when she was a patient at another hospital. Mrs. Vancena told her that Lydia was breathing fast. Ms. Darty examined Lydia and confirmed that she was breathing pretty fast. Ms. Darty also felt that Lydia looked bad. Ms. Darty thus told Mrs. Vancena that she was going to get Dr. Hussain, who was in a meeting in the hospital, to come to examine Lydia. Ms. Darty indicated that Mrs. Vancena did not ask her to contact Dr. Hussain; rather, she did so as an exercise of professional judgment. She also indicated that if Dr. Hussain's RNP, Ms. Bell, was still at the hospital she would have gone to the RNP instead of going to Dr. Hussain.
At 8:00 p.m. Dr. Hussain came to Lydia's room and ordered a continuous pulse ox, a chest x-ray, and intravenous ("IV") fluids and antibiotics. (The order for IV antibiotics was a STAT order.) Dr. Hussain also ordered a PICU consult with Dr. Hedayat, which was done at 9:30 p.m. Dr. Hedayat ordered that Lydia be moved to PICU if her condition worsened. At 10:45 p.m., Lydia was moved to PICU when it was determined based on the x-rays that her esophagus had been perforated during the esophagogastroduodenoscopy, which is a known risk of the surgical procedure. Following emergency surgery that night, Lydia remained critically unstable for twenty four hours, and she spent eight days on ventilator support. Ultimately, she fully recovered.
On May 2, 2007, Mrs. Vancena filed a complaint with the Board against Ms. Lawhead alleging violations of La. R.S. 37:969 A(4)(f). In her complaint, she alleged that Ms. Lawhead failed to accurately assess Lydia's symptoms of respiratory distress and failed to notify Lydia's physicians of her condition.
On June 5, 2007, the Board held a full hearing at which eight witnesses testified: Mrs. Vancena; her husband, Laurence Vancena; Ms. Hall, RN; Ms. Bell, RNP; Ms. Chico, RN; Ms. Darty, RNP; Janice McFadden, RN;[7] and Ms. Lawhead, RN (at the time of the incident a LPN). Both Mr. and Mrs. Vancena testified that Mrs. Vancena made multiple requests to Ms. Lawhead that she contact Dr. Hussain. Ms. Hall, Ms. Bell, Ms. Chico, Ms. Darty, and Ms. Lawhead all testified that Mrs. Vancena did not request that they contact Dr. Hussain. Making an express credibility call, the Board in its decision strongly questioned the credibility of the nurses. Based on the evidence presented at the hearing, the Board concluded that Ms. Lawhead failed to practice nursing in accordance with the standards normally expected and that this constituted unprofessional conduct as well as an act that adversely affects the physical or psychosocial welfare of a patent in violation of La. R.S. 37:969 A(4)(f). The Board noted the following:
 The respondent, in her sworn testimony, DID identify some assessments she made that were NOT within normal parameters for a child this age.
 The respondent DID NOT evaluate these findings as being significant enough that she should ENSURE that a physician be notified.
 The respondent ALSO FAILED to identify and/or act upon the urgency and panic in the mother related to the status of her child to the point that the respondent would insist the Registered Nurse or Registered Nurse Practitioner notify the physician.
The Board imposed a three month suspension of Ms. Lawhead's license, various *668 fines and assessments, and a one year probationary period with numerous conditions, requirements, and fees.
On September 11, 2007, Ms. Lawhead filed a Petition for Judicial Review of the Board's decision. On October 31, 2007, the trial court rendered judgment in the Board's favor. The trial court found that the record demonstrates the Board's decision is supported by a preponderance of the evidence as required by La. R.S. 49:964 G(6). Citing Armstrong v. Louisiana State Board of Medical Examiners, 03-1241, p. 11 (La.App. 4 Cir. 2/18/04), 868 So.2d 830, 838, the trial court further found that Ms. Lawhead failed to carry her burden of proving the record contains no facts to establish the validity of the charges levied against her. The trial court thus upheld the Board's decision and the sanction the Board imposed.[8] This appeal followed.

STANDARD OF REVIEW
The standard of review of an administrative agency's decision is narrower than the standard of review applied to civil and criminal appeals. Reaux v. Louisiana Bd. of Med. Examiners, XXXX-XXXX, p. 3 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, 726. The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964 G of the Administrative Procedure Act. Defining the scope and standards for judicial review of administrative agency decisions, La. R.S. 964 G provides that a court can reverse an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
La. R.S. 49:964 G. Moreover, "[t]he agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence." La. R.S. 49:956(3).
A reviewing court should not set aside an administrative agency's decision to impose a particular sanction unless that decision can be characterized as arbitrary, capricious or an abuse of discretion. Holladay v. Louisiana State Bd. of Med. Examiners, 96-1740, p. 18 (La.App. 4 Cir. 2/19/97), 689 So.2d 718, 727 (citing La. R.S. 49:956(5)).
The jurisprudence has also recognized that "in reviewing such [administrative] *669 actions, courts must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession." Armstrong, 03-1241 at p. 11, 868 So.2d at 838 (citing Montalbano v. Louisiana State Bd. of Med. Examiners, 560 So.2d 1009, 1011 (La.App. 4 Cir.1990)).

DISCUSSION
On appeal, Ms. Lawhead contends that the trial court erred in affirming the Board's decision because the Board lacked sufficient evidence to support its position as required by La. R.S. 37:969 A(4)(f). She further contends that the trial court erred in upholding the Board's decision since the evidence demonstrates that (i) there is a serious fact issue regarding whether the patient made a request that she contact Dr. Hussain; (ii) Dr. Hussain was contacted (albeit indirectly through his RNP, Ms. Bell) even though the patient did not request it; and (iii) Ms. Lawhead followed all orders and hospital policy in her actions. The Board counters that the evidence, including the testimony of Mr. and Mrs. Vancena, is sufficient to support the Board's decision and that the trial court's decision, which affirmed the Board's decision, should therefore be affirmed.
Given the strong jurisprudential presumption of correctness of an agency's actions, Ms. Lawhead has the burden of proving the record contains no facts to establish the validity of the charges levied against her. Armstrong, 03-1241 at p. 11, 868 So.2d at 838. The charge levied against Ms. Lawhead is that she failed to call the treating physician when specifically requested to do so on more than one occasion by the infant patient's mother, Mrs. Vancena. Ms. Lawhead testified at the hearing that she would have called the physician if the parents had requested she do so, but she denied that they made such a request. The parents, on the other hand, both testified that the mother made multiple requests to not only Ms. Lawhead, but also to the other nurses who cared for the infant that day. Although the other nurses testified at the hearing that the mother did not make a request that they call the physician, the Board strongly questioned the credibility of their testimony. The Board made a credibility call in favor of the parents and found that Ms. Lawhead failed to call the physician despite the mother's express requests that she do so.
The applicable statutory provision governing the judicial standard of review mandates that "due regard shall be given to the agency's determination of credibility issues." La. R.S. 49:964 G(6). The Board's decision in this case hinged on a credibility call. The Board found the testimony of the parents credible and thus found Ms. Lawhead guilty of unprofessional conduct. Although the Board's actions seem harsh, particularly in light of her unblemished ten year work record, the stringent standard of review and the strong presumption of correctness dictate that the decision of the Board not be disturbed.

DECREE
For the foregoing reasons, we affirm the decision of the trial court, which affirmed the decision of the Board.
AFFIRMED.
ARMSTRONG, C.J., concurs in the result.
McKAY, J., dissents.
*670 ARMSTRONG, C. J., concurring in the result.
I respectfully concur in the result reached by the majority.
McKAY, J., dissenting.
I respectfully dissent from the majority opinion. Although, this Court must recognize the presumption of validity and propriety in the Board's conclusions, I find nothing in the jurisprudence to indicate that this presumption is irrebuttable. The statutory requirements that the reviewing court upon its independent review of the record as a whole must determine whether the Board proved its case by a preponderance of the evidence pursuant to: La. R.S. 49:964 G(6).
I have reviewed the evidence presented to the Board and reviewed by the trial court with respect to the allegations levied against Nurse Lawhead by Kim Vancena. Although the trial court, in its reasons for judgment, noted that the ruling of the Board followed La. R.S. 49:964 G(5) and (6) and was not arbitrary and capricious, the record before this Court does not support such a conclusion. The record does not contain sufficient testimony or other evidence, adduced at the Board hearing, to conclude that Nurse Lawhead's actions were unprofessional. Objectively, in reviewing the recordin particular the testimony of the other nursesit is abundantly obvious that at all times Nurse Lawhead acted pursuant to her orders in contacting the nurse in charge regarding questions she had concerning the child's care, as per hospital policy. Any other conclusion would be incorrect.
Therefore, I would find that the trial court erred in upholding the decision of the Louisiana Board of Practical Nurse Examiners ("the Board"). Based upon the record, I would reverse the judgment of the trial court and find that the Board's decision was arbitrary and capricious.
NOTES
[1] Pursuant to La. R.S. 37:963, the Board has a statutory domicile in New Orleans, Louisiana.
[2] Lydia is a twin who was born premature. Because of her premature birth, Lydia had ongoing medical problems.
[3] Ms. Bell worked with Dr. Hussain pursuant to a collaborative practice agreement.
[4] Ms. Lawhead subsequently completed the requirements for becoming a RN. At the time of the incident in question, she had almost completed her RN courses.
[5] The delay in administering the drugs was due to hospital routine that drugs had to be ordered from the hospital pharmacy and then delivered to the patient's room.
[6] Ms. Darty was married at the time of the hearing. Her married name is Campbell. Since she is referred to by the parties by her maiden name Darty, we use her maiden name in this opinion.
[7] Ms. McFadden testified primarily as a character witness. She stated that the Vancenas never mentioned Ms. Lawhead when they made a complaint to the hospital.
[8] Ms. Lawhead also included in her petition a claim for defamation based on the Board's allegedly unauthorized reporting of its ruling to the National Practitioner Databank. That claim is not before us. On November 8, 2007, the trial court certified its judgment as a final judgment for purposes of immediate appeal.