30 So.3d 1 (2009)
Paula DAVIS
v.
LOUISIANA STATE BOARD OF PRACTICAL NURSE EXAMINERS.
No. 2009-CA-0509.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 2009.
Rehearing Denied January 13, 2010.
Walter R. Woodruff, Jr., Eric A. Bopp, Edward S. Bopp-A Law Corporation, Mandeville, LA, for Plaintiff/Appellant.
Francis B. Mulhall, Metairie, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
Paula Davis, a licensed practical nurse, appeals a judgment of the trial court affirming the decision and order of the Louisiana State Board of Practical Nurse Examiners. After a hearing was conducted on formal complaint filed by State Board of Practical Nurse Examiners, the Board revoked Ms. Davis' Louisiana Practical Nurse License, fined her $500.00 for pertinent violation of statutes and regulations, and assessed a hearing fee of $500.00. We find no error in the Board's decision and trial court affirmation, as the evidence was sufficient to support the hearing officer's rejection of the credibility of Ms. Davis and the Board's subsequent license revocation. We find that the board's decision was supported by the preponderance of the evidence. Further, we do not find the *2 Board's decision arbitrary, capricious, or an abuse of discretion and affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Paula Davis was a licensed practical nurse (LPN), licensed by the Louisiana State Board of Nursing (hereinafter the "Board"). The Louisiana State Board of Practical Nurse Examiners received complaints concerning the nursing practices of Ms. Davis while she was employed at three (3) facilities: Saint Anna's Residence; Meadowcrest Living Center; and Marrero Healthcare Center.
In August 2007, the Board submitted a complaint against Ms. Davis. The Board conducted a hearing based on the complaint against Ms. Davis regarding alleged violations of La. R.S. 37:969 A(4)(c), (d), (f) and (g), and Louisiana Administrative Code, title 46, Part XLVII, Subpart 1, Sections 306 T(3) and (4) and (8)(a), (b), (g), (h), (i), (j), (p) and (r).
After the hearing was conducted, the Board ordered that Ms. Davis' LPN license be revoked. The Board also ordered Ms. Davis pay a fine of $500.00 and a hearing assessment fee of $500.00. Ms. Davis filed a Petition for Judicial Review of the Board's order. The trial judge subsequently affirmed the decision and order of the Board. Ms. Davis has filed the instant timely appeal.

STANDARD OF REVIEW
The standard of review of an administrative agency's decision is more narrow than the standard of review applied to civil and criminal appeals. Reaux v. Louisiana Bd. of Med. Examiners, XXXX-XXXX, p. 3 (La. App. 4 Cir. 5/21/03), 850 So.2d 723, 726. The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in Administrative Procedure Act in La. R.S. 49:964(G). Defining the scope and standards for judicial review of administrative agency decisions, La. R.S. 49:964(G) provides that a court can reverse an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
La. R.S. 49:964 G.
"[T]he agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence." La. R.S. 49:956(3). Further, jurisprudence has recognized that "in reviewing such [administrative] actions, courts must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of *3 members of that profession." Armstrong v. Louisiana State Board of Medical Examiners, 03-1241, p. 11 (La.App. 4 Cir. 2/18/04), 868 So.2d 830, 838 (citing Montalbano v. Louisiana State Bd. of Med. Examiners, 560 So.2d 1009, 1011 (La.App. 4 Cir.1990)).

THE BOARD'S DECISION
On appeal, Ms. Davis argues that the trial court erred in affirming the Board's decision. Ms. Davis avers that the Board lacked sufficient evidence to support its decision to levy sanctions against her. The Board counters that the evidence, including the testimony of four witnesses, is sufficient to support its decision. The Board maintains that the trial court's decision, which affirmed its decision, should be affirmed.
The Board's complaint against Ms. Davis resulted from the following:

St. Anna's Residence
In July 2006, St. Anna's Residence reported to the Board allegations that resulted in Ms. Davis's termination as follows:
Ms. Davis administered 3 tablets of Tylenol P.M. to a resident without a physician's order. Pursuant to a request by Ms. Davis, a Certified Nursing Assistant (CNA) purchased this medication at a nearby pharmacy.
Prior to the leaving her shift on July 3, 2006, and July 4, 2006, Ms. Davis failed to count narcotics according to protocol. The Controlled Substance Record reflected that Ms. Davis endorsed the record for Hydrocodone every four (4) hours, however she did not complete the resident's Medication Administration Record (MAR) to reflect the same.
A resident under Ms. Davis' care was to receive the medication Ativan daily at 8:00 P.M. An endorsement reflecting receipt of this medication was not made on the Control Substance Record, nor was it made on the resident's MAR. Inventory of the Controlled Substance Record revealed a difference of three (3) pills in the medication present and medication for which an account was provided in the record. Ms. Davis corrected the Controlled Substance Record, however she did not inform the Director of Nurses (DON) or the pharmacy of the corrections.

Meadowcrest Living Center
In August 2006, Meadowcrest Living Center made a report to the Board that indicated that Ms. Davis was terminated from the facility within her 90-day probation period for the following:
In July 2006, the DON was informed that two weeks of pain medication was missing from three (3) separate blister medication cards of two residents, totaling 42 pills. Other residents were administered pain medication without request or need. On August 3, 2006, at 9:30 a.m., Lortab from two medication cards was removed and replaced with 600-mg Ibuprofen. The MARs and nursing notes did not reflect that complaints of pain were made by the residents nor was it recorded that medications were given. At 5:30 p.m. on August 3, 2006, the DON received a call from an LPN who discovered that two Percocet tablets were removed from a resident's medication card and replaced with 500-mg Acetaminophen tablets. It was discovered that Ms. Davis was the only nurse with a key to the medication cart where the drugs were stored prior to each discovery.

Marrero Healthcare Center
The Board conducted an investigation and discovered that in February 2005, Ms. Davis gave medication to a resident at an unassigned time and did not sign the narcotic sheet according to protocol. Due to *4 this failure, the medication was readministered.
During one shift, Ms. Davis arrived at work at 6:30 a.m., left at 8:30 a.m., and returned at 1:00 p.m. Again, she left at 2:00 p.m. and returned at approximately 4:00 p.m. During that time, medications were not administered as ordered and Ms. Davis refused to provide wound care. On July 7, 2005, Ms. Davis was terminated from her employment at Marrero Healthcare Center for failing to sign MARs.
Ms. Davis provided the Board with a detailed narrative regarding the allegations at the aforementioned facilities denying the allegations. A formal hearing was conducted in May 2007.
Ms. Davis was found to be in violation of Louisiana Revised Statutes of 1950, Title 37, Chapter 11, Part II, Section 969 A(4), 978; and
(c) Is unfit, or incompetent by reason of negligence, habit, or other causes; and
(f) Is guilty of unprofessional conduct; and
(g) Has violated any provisions of this Part.
Ms. Davis was also found in violation of the following parts of Louisiana Administrative Code, Title 46, Part XLVII, Subpart 1, Sections 306 T:
3. being unfit, or incompetent by reason of negligence, habit or other causes; and
8. being guilty of unprofessional conduct;
a. failure to practice practical nursing in accordance with the standards normally expected; and
b. failure to utilize appropriate judgment in administering nursing practice; and
g. improper use of drugs, medical supplies, or patients' records; and i. falsifying records; and
j. intentionally committing any act that adversely affects the physical or psychosocial welfare of the patient; and
p. inappropriate, incomplete or improper documentation.
The issue presented is whether given the jurisprudential presumption of correctness of an agency's actions, the record contains a preponderance of evidence supporting the hearing officer's findings and conclusions as adopted by the Board. This presumption must be read against the explicit statutory pronouncement that the reviewing court is to determine upon its independent review of the record as a whole whether the agency proved its case by a preponderance of the evidence. La. R.S. 49:964 G(6). Ms. Davis bears the burden of proving that the record contains no facts that would establish the validity of the charges levied against her. See Armstrong v. Louisiana State Bd. Of Med. Examiners, p. 11, 868 So.2d at 838.
We find that the record contains sufficient testimony and evidence adduced at the Board hearing to support the conclusion that the charges alleged against Ms. Davis were valid. Four (4) witnesses testified at the hearing: Debra Godsey, RN, DON, St. Anna's Residence; Mario Hills, LPN, St. Anna's Residence; Rita Anderson., RN, DON, Meadowcrest Living Center; and Ariane Tero, CNA, St. Anna's Residence.
Ms. Mario Hills, LPN, testified as follows:
"... [S]he was like I'm not putting up with this today, because Ms. DeLange is like a whiner or whatever. And that's when she putgot her Tylenol P.M., she wentand I asked her what it was, she went to the nurses' cart, crushed it up, put the applesauce in there, and went in Ms. DeLange's room and gave it to her."
*5 Ms. Debra Godsey, R.N., the Director of Nurses at St. Anna's Residence testified on the report of Ms. Hills as follows: "[s]he [Mario Hills, LPN] reported that she watched her [Ms. Davis] crush the Tylenol and that she was giving it to her in the evening to keep her quiet."
Ms. Rita Anderson, R.N., the Director of Nurses at Meadowcrest Living Center, testified that she met with Ms. Davis the Assistant Director of Nurses and questioned Ms. Davis as to why she administered pain medications without supporting documentation. Ms. Anderson further testified as follows:
"... She did not answer. When I asked her about the missing forty-two pills, she replied that she did not notice that they were missing. I pointed out to her the pattern of activities, ... `Missing pain medications must stop. If you administer a pain medication, I strongly advise you to follow the documentation protocol ...'"
Ms. Davis testified at the hearing and maintains that many of her co-workers shared her deficiencies and shortcomings. However, we do not find that allegations against co-workers for similar infractions minimize Ms. Davis' own professional responsibility. Further, among the hearing officer's factual findings was a specific conclusion that the Board's witnesses were credible and Ms. Davis was not credible. The applicable statutory provision governing the judicial standard of review mandates that "due regard shall be given to the agency's determination of credibility issues." La. R.S. 49:964 G(6). We do not find that the Board's findings can be characterized as arbitrary, capricious or an abuse of discretion.
Ms. Davis maintains that the Board committed reversible error in notifying her that her license would be suspended and subsequently tendering Ms. Davis a corrected order providing that her license would be revoked.[1] Ms. Davis contends no support exists for the Boards decision to revoke her license and that it should not have been revoked, but merely suspended. Therefore, Ms. Davis avers that the Board's decision to revoke her license prejudices her substantial rights.
The initial order contained what the Board has characterized as a typographical error. This error, which supplanted an effective suspension in place of revocation, was corrected in an order that was issued three days following the issuance of the initial order. Nevertheless, the findings made by the Board after several substantiated complaints were made by healthcare facilities against Ms. Davis provide support for the Board's decision. We find that the Board's decision was supported by a preponderance of the evidence.
Ms. Davis contends that she had no previous disciplinary issues with the board in her four-year career. Ms. Davis thus characterizes the Board's decision to impose revocation of her license rather than suspension as an extraordinary and extreme decision will permanently deprive her of a nursing license. The Board counters that it did not consider the infractions by Ms. Davis at three separate healthcare facilities to be minor or insignificant, particularly when involving protection of those for whom nurses are sworn to provide care.
The imposition of an administrative sanction is in the nature of a disciplinary measure and in deciding what, if any, discipline to impose, an administrator or administration *6 may, within the range of permissible discretionary limits, be strict, moderate or lenient and, unless arbitrary, such discretion or a decision must be upheld. Mayeaux's Food and Sporting Goods, Inc. v. State Dept. of Health and Human Resources, 470 So.2d 469 (La.App. 1st Cir.1985). As this Court has stated, though the Board's actions may seem harsh in light of what Ms. Davis characterizes as an unblemished work record, "the stringent standard of review and the strong presumption of correctness dictate that the decision of the Board not be disturbed." Lawhead v. Louisiana State Bd. of Practical Nurse Examiners, XXXX-XXXX, p. 9 (La.App. 4 Cir. 10/28/08), 995 So.2d 664, 669.
After reviewing the record and in light of the strong presumption of correctness, we cannot characterize the administrative decision as arbitrary given the Board's consideration of the evidence and assessment of weight to the evidence. Further, the Board's decision is not capricious in that there is a substantial basis for their conclusion, which is substantiated by competent evidence. Therefore, the trial court did not err in affirming the Board's decision to revoke Ms. Davis' nursing license.

DECREE
For the foregoing reasons, we affirm the decision of the trial court.
AFFIRMED.
BELSOME, J., Dissents With Reasons.
BELSOME, J., Dissenting.
I cannot agree that the Louisiana State Board of Practical Nurse Examiner's determination to revoke Appellant's license was supported by a preponderance of the evidence.[1] Therefore, I dissent.
In this case, the Board revoked Appellant's license despite the conflicting testimony between Mario Hills and Paula Davis. Although Mario Hills testified that she witnessed Ms. Davis administer the Tylenol P.M. to the patient, Ms. Davis denied ever administering the Tylenol P.M., and plainly testified that the purchase of the Tylenol P.M. was for her personal use only. Mario Hills was the sole person who claimed to have witnessed Ms. Davis administer the Tylenol P.M., and inexplicably waited nearly two weeks to come forward with this information. All other evidence against Ms. Davis was circumstantial.
While the allegations in this case, if true, are serious and should not be minimized, the trial court erred when it affirmed the Board's decision to strip Ms. Davis of her profession and livelihood based essentially upon suspiciously delayed testimony from only one alleged eyewitness. Moreover, Ms. Hills, a witness whose objectivity is debatable, was unable to articulate any reasonable explanation for the lengthy delay in reporting the administration of the Tylenol P.M.an action that the Board *7 argues was potentially fatal. The lack of an explanation for the delay gives this writer great pause, because if a patient's health were truly in danger, it seems that one should be held accountable for such misconduct immediately.
Considering the evidence in the record, this writer would find that a six month suspension[2] would have been a more than appropriate remedy, rather than the revocation of Appellant's license, which prejudiced her substantial rights.[3]See La. R.S. 49:964(G). Therefore, I would reverse the trial court's affirmation of the Board's determination to revoke Appellant's nursing license.
NOTES
[1] The Louisiana State Board of Practical Nurse Examiners mailed two separate orders to Ms. Davis. The first Order was mailed on August 17, 2007; it ordered that Ms. Davis' license be suspended. A second order was mailed three days later, on August 20, 2007, and it stated that Ms. Davis' license was revoked.
[1] As the majority recognizes, a reviewing court may reverse or modify an agency's determination if an individual's substantial rights have been prejudiced because the Board's findings, inferences, conclusions, or decisions are:

[n]ot supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has had the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
La. R.S. 49:964(G)(6)(emphasis added).
[2] As the majority noted, although purportedly a clerical error, the initial Order issued by the Board to Ms. Davis fined Ms. Davis $500.00 and suspended her license.
[3] A license to practice nursing is a basic property right. See, e.g., Williams v. Louisiana State Bd. Of Nursing, XXXX-XXXX, p. 1 (La. 1999), 733 So.2d 1192.